TAYLOR ET AL., COUNTY SUPERVISORS, *v.* STATE EX REL. COLLINS, ATTORNEY GENERAL.

[83 South. 810, In Banc. No. 21192.]

1. TAXATION. *Legislature may bestow power to equalize assessment as it may see fit.*

The power to equalize assessments given both the board of supervisors and the state tax commission are purely statutory. No constitutional privilege to equalize assessments is conferred upon the board of supervisors by the constitution; neither is any such power conferred upon the state tax commission. It therefore rests entirely with the legislature to bestow so much or so little of this power as it may see fit upon either board.

2. TAXATION. *Duties of board of supervisors when ordered by tax commission to increase value of classes of property stated.*

Under Laws 1910, chapter 98, sections 5 and 6, when a board of supervisors is notified by the state tax commission to increase the assessed valuation of any class of property, it is its duty to consider the individual assessments of taxpayers whose property is affected by the order; but if its equalization of the assessment among individuals does not produce the ordered increase, it must apply a horizontal raise to all property of the class.

3. TAXATION. *When tax commission orders increase in valuation board of supervisors has no discretion.*

Under Laws 1916, chapter 98, sections 5 and 6, the decision of the state tax commission in ordering a board of supervisors to increase the value of certain classes of property is final and the board of supervisors have no discretion about making the increase.

4. TAXATION. *Order of state tax commission to board of supervisors to increase valuation construed.*

 An order of the state tax commission to the board of supervisors to increase the valuation of certain classes of property "overvaluing no property and equalizing the assessment so that every assessment will bear an equal proportion to value," merely meant that they must not overvalue any property of the individual, when considered in connection with the value of similar property of other individuals in the county.

5. MANDAMUS. *Proper remedy to compel board of supervisors to increase valuation as ordered by tax commission.*

 As the board of supervisors when ordered by the state tax commission to increase the valuation of certain classes of property has no discretion in the matter, and the state has no plain, adequate, and speedy remedy in the ordinary course of law to compel compliance with the order, mandamus is therefore the proper remedy.

APPEAL from the circuit court of Quitman county.

HON. W. A. ALCORN, JR., Judge.

Mandamus by the state on the relation of Ross A. Collins, attorney general, against C. W. Taylor, and others members of the Board of Supervisors of Quitman County. From a judgment adjudging defendants in contempt and imposing sentences, they appeal.

The facts are fully stated in the opinion of the court.

*Shands & Jackson,* for appellant.

Appellants contend as follows: First: That appellee was not entitled to the issuance of the writ of mandamus in this cause. Second: That in so far as the writ undertook to direct what judgment should be entered by the Board of Supervisors, that the order directing it was beyond the power of the court, and, therefore, null and void. Third: That sentence as for a contempt cannot be pronounced against any person for a violation of a void order. Fourth: The record discloses a compliance, by the appellants, with the order of the court so far as it is possible for it to be complied with, and that it is error to sentence appellants because of failure to act.

The writ of mandamus is one of the extraordinary or high prerogative writs, and should never issue except in those cases where it is expressly provided for by the statute. Its issuance is governed by section 3231 of the Mississippi Code of 1906.

Where there is a plain, adequate and speedy remedy in the ordinary course of law, the writ of mandamus should not issue. We presume it is unnecessary to discuss the proposition as to whether or not the remedy provided by chapter 120 of the Acts of 1918 is plain. Anyone who can read, can easily understand the remedy. It is so plain that no one, even though a fool need err therein.

The next question which occurs is as to whether or not the remedy prescribed is adequate. We submit that on appeal an opportunity is given both to the taxpayer and to the state, to introduce proof to be heard, in person and by the attorney, and that when so heard, each case is decided on its own merits, and when a judgment is rendered it is final.

On this appeal provision is made for both parties calling witnesses and for the taking of proof, determined by the circuit judge to be competent, and for submitting to a jury fully charged as to the law applicable to the case, from which we submit that when accuracy and justice is the end desired, that a remedy by appeal is much more adequate than could be the hearing of the petition for a writ of mandamus, which would necessitate, if heard upon petition and answer, the taking of proof in one proceeding as to the value of every piece of property in the county.

We then come to the consideration of the question as to whether or not the remedy by appeal is as spedy. This can be determined easily by tracing the steps necessary to be taken before final judgment is reached in any case.

If the attorney-general is dissatisfied with the value as corrected by the board of supervisors, in accordance with the instructions of the state tax commission, and he elects to appeal, the case is triable as a preference case at the next ensuing term of the circuit court, when, as indicated above, a final judgment entered, and barring the question of appeal to the supreme court fixes for once and for all the question of the taxable value of that particular piece of property.

But if on the other hand he sees fit to sue out a writ of mandamus, which is granted, and the board of supervisors, disregarding their plain duty to determine the value of each piece of property according to its true worth but blindly fixes it at an amount therefore determined by the circuit judge, no final judgment is rendered; but either the taxpayer or the attorney-general, whichever feels aggrieved by such action by the board of supervisors, proceeds then to appeal, as, the attorney-general might have done in the first instance, provided the board of supervisors do not feel as the board felt in this case that they were bound by their oath of office to support the constitution of the state of Mississippi and by that provision of the constitution of the state of Mississippi which required that they should assess each particular piece of property according to its true value. *Robinson et al.* v. *Board of Supervisors of Ittawamba County,* 105 Miss. 90; *State Board of Education* v. *City of West Point,* 50 Miss. 638; 26 Cyc., page 168; *McHenry* v. *State,* 91 Miss. 562. We might multiply authorities *ad nauseam* to the same effect, but we do not consider it necessary.

Second Contention: If we be mistaken in our first contention, then we say that in so far as the judgment of the court directing the issuance of the writ of mandamus undertakes to control the discretion of the board of supervisors such writ is null and void.

This doctrine has been announced so many times and absolutely without exception, that it seems hardly necessary to argue it other than to cite Mississippi decisions so holding, some of which are: *Madison County* v. *Alexander Walker*, 523; *Attala County* v. *Grant*, 9 S. & M. 77; *Swan* v. *Gray*, 44 Miss. 383; *Vicksburg* v. *Rainwater*, 47 Miss. 547; *Clayton* v. *McWilliams*, 49 Miss. 311; *State Board* v. *West Point*, 58 Miss. 638; *Moore County* v. *State*, 63 Miss. 135; *Shotwell* v. *Covington*, 12 So. 260; *McHenry* v. *State*, 91 Miss. 562; *Robinson* v. *Board of Supervisors of Ittawamba County*, 105 Miss. 90.

We realize, however, that in order for us to profit by this line of decisions, this court must be of opinion that the board of supervisors in determining the assessable value of real estate of Quitman County was acting in a judicial capacity.

That they so acted prior to the creation of the state tax commission was held in several of the decisions above cited by us, and which has been consistently held by the court, Section 6 of chapter 98, The Acts of 1916, expressly confers upon the board of supervisors and not upon the state tax commissioners the power of raising or lowering the individual return of a taxpayer.

Section 5, chapter 136 of the Acts of 1918, directed that the board of supervisors shall, at the June meeting, proceed to equalize such rolls. Section 6, chapter 135 of the Acts of 1918, provides for the hearing of objections at the July meeting, and provides that the board shall hear and determine all exceptions to the roll, and shall equalize the assessments, and may increase or diminish the valuation of any property so the property of the same value shall be assessed for an equal sum.

Section 7 of this act provides for final judgment to be entered by the board of supervisors which under no circumstances will preclude a taxpayer from questioning the validity of the assessment.

Section 10 provides that the board of supervisors, after receiving instructions from the state tax commission, "shall equalize" the assessments and provides a method of appeal from this court of limited jurisdiction to the circuit court, a court of unlimited jurisdiction. Our third contention is that sentence as for contempt cannot be pronounced against any person for the violation of a void order.

It would be impossible for me, or I think for any one to make a stronger presentation of this thought than was made by WHITFIELD, Justice, in the case of McHenry v. State 91 Miss. 562; Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914; Ex Parte Fisc, 113 U. S. 713, 718; 5 Sup. Ct. 524, 28 L. Ed. 1117-1119; Re Bonner, 151 U. S. 242, 14 Sup. Ct. 323, 38 L. Ed. 149; Re Mills, 135 U. S. 263-270, 10 Sup. Ct. 762, 34 L. Ed. 107-110; Ex parte Terry, 128 U. S. 289, 304, Sup. Ct. 77, 32 L. Ed. 405-408; Ex Parte Reed, 100 U. S. 13, 23, 25 L. Ed. 538, 539; Re Frederich, 149 U. S. 70-76, 13 Sup. Ct. 793, 37 L. Ed. 655-656; Bigfelow v. Forest, 9 Wall. 339, 19 L. Ed. 969. See, also, note entitled want of authority under jurisdiction conferred, In re Morrill, 11 L. R. A. 157, 20 or 96; Ex parte Rowland, 104 U. S. 604,, 26 L. Ed. 861, 9 Cyc 13.

In the case atbar the supreme law of the land directed that the board of supervisors in assessing the value of the property in Quitman county for taxation directs that none of it shall be assessed in excess of its fair market value, and directs that the board of supervisors shall ascertain such fair market value in a regular way, and according to the due process of law.

Obeying this supreme power in the state, the board, according to the undisputed facts in this case, as appears from their uncontroverted sworn answer, heard proof and ascertained the value of each individual acre of land in Quitman county to be as recorded upon the assessment roll.

In this connection we wish to call the court's attention to the case of *Town of Jonestown* v. *Ganog,* 52 So. 579, in which the court says: "It appears that our statute fixes the limit of taxation for municipalities, and it seems well settled that a mandamus cannot be issued to compel the levy of a tax beyond the statutory limit."

For all of which reasons we respectfully submit that the judgment appealed from should be reversed and appellants discharged, and the motion for a citation for contempt dismissed.

*Oscar Johnston,* for appellant.

The power of taxation is the highest attribute of sovereignty and is a power which should be exercised with the greatest care and caution and in strict conformity with the organic law of the land. The power to sell, and, therefore, the power to take property for taxes is not protected by that provision of the constitution which stipulates that private property shall not be taken for public use without compensation being first made. *Williams* v. *Cammack,* 27 Miss. 209.

The individual, however, is protected by the constitutional provision that a person's property shall not be taken except by due process of law. In determining the power of taxing authorities and the validity of all revenue laws, a court as well as a legislature, must always bear in mind the fundamental proposition that there must be authority for the sale of the property taxed—in other words, there must be a right to enforce the collection, for no matter how great the power to tax, nor how elaborate may be the scheme of taxation if it is not accompanied by the power to sell the property, the entire structure must fall. So in constructing revenue laws it should be borne in mind that nothing may be done which will render void or abortive the effect to sell the property taxed, and in this connection it

must also be borne in mind that no authority for the sale of the property in the enforcement of a tax collection is valid which ignores the ''due process of law clause'' of the Federal Constitution.

In the outset permit me to say that I do not contend that the right to assess or value property for purposes of taxation is conferred by the constitution of the state of Mississippi upon the board of supervisors. On the contrary, I concede that the entire power of the board of supervisors and its entire relation to our revenue laws is of statutory authority and that the legislature may by appropriate legislation take from the board of supervisors its entire jurisdiction of this subject-matter, whether or not the legislature has in effect exercised this prerogative I shall discuss further along in this brief.

Section 144, being the first section of article six, of our constitution, provides: ''The judicial power of the state shall be vested in a supreme court and such other courts as are provided for in this constitution.'' Then, after making suitable provision for the composition of the supreme court and its jurisdiction, the framers of the constitution by section 152 made provision for circuit and chancery courts providing for the division of the state into appropriate districts then defining the powers and the jurisdiction of these two courts. Then after having made the necessary provision for the supreme court and for the circuit and chancery courts, the convention in this same article by section 170 provided for the division of each county of the state into five districts and for the selection of a supervisor from each district and for the establishment of the board of supervisors. The convention proceeded, by section 171, to make provision for the justice of the peace, having thus established the judicial system ranging from the supreme court, having jurisdiction over the entire state, the circuit and chancery court.

The wise and able lawyers composing our constitutional convention of 1890 had in mind a definite purpose in thus putting the board of supervisors in the judicial department. Normally, it would appear that the board of supervisors would more properly belong to the legislative department. It is not infrequently referred to as the "legislature of the county." Subject to certain limitations it enacts ordinances and regulations for the government of the county, it appropriates money to meet the obligations of the county, it incurs obligations in behalf of the county, it fixes the right of taxation, and in short, performs many legislative functions. Why, then, it may be asked, was it made a part of the judicial department?

The answer is clear to the student of the constitutional history of our state and the history of our fiscal system, and here we find the connection between the board of supervisors and the taxing power. By the constitution dealing with the subject of revenue the office of tax assessor was created and by law this assessor was charged with the duty of assessing, that is to say, of valuing for the purpose of taxation, all of the property of the county. Then this process of valuation was completed by the assessor, the roll upon which the valuations are shown is required to be filed with the board of supervisors for its approval.

By chapter 98, of the Laws of 1916, provision was made for the creation and establishment and the operation of the state tax commission; this law was somewhat amended in 1918 with regard to details connected with the administration of the act. Shortly after its enactment the constitutionality of the act was called into question by the board of supervisors of Washington county, that board declining to comply with an order of the commission directing it to increase the assessed valuation of personal property in Washington county. The commission, acting through the attorney-general ap-

plied for a writ of mandamus and the case came before this court for determination; this proceeding being reported under the style of *State ex rel.* v. *Wheatley,* 113 Miss. 555 et seq. In the opinion of this court rendered in the case mentioned, was found a complete and an exhaustive interpretation of the law creating the commission, and until a further pronouncement of this court to the contrary, I take it that we are warranted in carrying out the terms and provisions of the law in question as it has been construed by and in accordance with the judgment of this court as expressed in its written opinion just cited. In the case just cited this court sustained the constitutionality of the act in question; this point having been determined, I present this cause, as stated, in the light of the interpretation placed upon the act by the court in Wheatley case. In the very beginning we are relieved of the necessity of reviewing the act creating the commission for the purpose of determining whether or not by that act any radical change was made in the existing system devised for the collection of revenue because this court at page 589 of volume 113 Mississippi Reports makes use of the following language: "There is no merit in the contention that the statute is invalid because it permits the state tax commission to equalize and raise the assessment of personal property without regard to valuation and assessment of real property; the act, itself provides no new standard of assessments." In my judgment this announcement was necessary in order to sustain the constitutionality of the act for I take it that it will not be contended that the state tax commission was established by the legislature in the exercise of its power to establish "such other inferior courts as may be necessary," under the authority of Section 172 of the Constitution of 1890. The state tax commission is in no sense a court, it has no jurisdiction to enter a judgment as between the individual property owner on the one

part and the state of Mississippi on the other.  It is
merely an advisory commission created in a laudable
attempt on the part of the legislature to provide for
the equalization of assessments as between counties.
To hold that its authority transcends that of the board
of supervisors, or to hold that it may arbitrarily with-
out evidence, without notice and without a hearing dis-
turb the finding of a board of supervisors as to the value
of a special tract of land would be tantamount to hold-
ing the act void from the beginning, because if vested
with any such power the right of the citizen to "due
process" is denied; likewise to hold that the commis-
sion may direct a horizontal increase or decrease in as-
sessed valuations without regard to the value of specific
terms of property would be to violate that clause guar-
anteeing "equality and uniformity" in the matter of
assessments.  So it was that this court having before
it two theories or two constructions, each applicable to
the act in question according to one of which the law
would be unconstitutional, according to the other, con-
stitutional, adopted, as it should have done, that theory
which was consistent with the constitutionality of the
act, and we are now called upon to determine the respec-
tive rights of the commission and the board of super-
visors under the act as now construed.

The board of supervisors as a court prior to the
enactment of chapter 98, Laws of 1916, had the right
under certain prescribed conditions to revise its judg-
ment, for example, in case of the destruction of the
building it might upon proper petition lower the assess-
ed valuation of the property upon which the building
was located.

The legislature by chapter 98 broadened the jurisdic-
tion of this court with reference to the matter of making
changes in its roll, that is to say by the law in question
it was expressly provided that the judgment should not
become final as between the individual and the state

until the happening of certain contingencies, namely until the roll should be sent to Jackson and there examined by a commission created by law, to-wit; the state tax commission. This commission was then by law authorized and empowered to return the roll recommending that it stand approved as made, or, if in their judgment, it did not provide for a proper assessment, recommending or directing that the board raise or lower the total values of any specific property. When the roll is thus returned it becomes the duty of the board of supervisors to give notice to the taxpayers of the re-opening of their case and of the fact that the assessments are to be revised in accordance with the direction of the commission, and therefore upon the date indicated in the notice, the board meets as a court for the purpose of reviewing its former judgment and rendering a final judgment as between the taxpayer and the state. In thus proceeding constitutional requirements are fully met and the state tax commission fully discharges the function for which it was created.

This, I understand, to be the interpretation of the law announced by this court, basing this understanding upon the following propositions quoted from the opinion of the court: "In accomplishing this increase of total valuation the board of supervisors are accorded the absolute right to distribute the burden of increase uniformly amongst the taxpayers of that class. If honest Richard Roe originally gave in his assessment at the top market price, at constitutional true value, and the state board ordered an increase whereby he is to be affected, Honest Richard has a right to appear at this meeting of the board and object to the increase so far as he is concerned. In objecting he has the right to tender evidence, if necessary, to establish his contentions. If the board should overrule his objections, he then has the right under section 8 of the Code to appeal from the order of the board to the circuit court of his

county." Of course, the contrary must be true, that is to say, the board may sustain his contention in which event the recommendation of the commission would not be applied to the property of "honest Richard." Again quoting: "In complying with this order the local board is not denied the right to hear the complaints of individuals and to refuse to increase the assessment of any particular individual whose property is already assessed at actual value." It must follow that the board of supervisors are the final arbiters charged with the duty of determining whether or not the value of a specific term of property is properly shown on the roll, in other words to determine values as between individual items of property and the state, and it must further follow that if the board has the right to refuse to raise the assessed value of a specific item of property belonging to "honest Richard Roe" because in the opinion of the board the property of "honest Richard, is already fully assessed, then clearly it must follow that if upon examination of the roll the board finds that every specific item of property in the county has been assessed at its true value it must have the power to refuse to raise the value of any specific item of property, and having refused to raise the value of each item the board is then clearly without power to increase the total, necessarily the right to determine the value of the property belonging to "honest Richard" is the right to exercise a certain judicial discretion, and if the board in the exercise of this discretion a certain individual it has the like power to refuse to raise the value of the property belonging to more than one individual, or belonging to two, three, five or a thousand individuals, and therefore the right to refuse to raise it as to all of the individuals in the county. The matter of distributing the burden equally amongst the owners of the property of a class is one that addresses itself to the sound discretion of the board, and in the

absence of a charge of fraud or corruption no man may say that the finding of the board upon a matter of fact, to-wit: the value of specific acre of land, is wrong. We refer the court to that part of its opinion in the Wheatley case appearing at page 594 of volume III, Mississippi Reports, where the court called attention to that part of the order of the commission which expressly stipulates that the local board shall not assess property for more than its actual value. In the very order itself, with the violation of which the board in the instant case is charged, carries with it the warning that the board of supervisors must not make a general horizontal increase and must not value any item of property at more than its true value. I pause here to ask "who is to determine the true value?" The state tax commission furnishes no evidence, but in my judgment, necessarily leaves this matter where it was originally placed by law, namely in the hands of the board of supervisors.

I again quote from the opinion of the court at page 596, volume 113, Mississippi Reports as follows: "At the same time it does not, either expressly or by implication, supercede the jurisdiction of the local board to equalize as between individuals." The original jurisdiction of the board of supervisors was to determine the assessible or taxable value of property within the county, and if the act under consideration in no wise supercedes that jurisdiction, then clearly it stands.

Coming now to apply the foregoing principles to the case at bar, we find that the board of supervisors of Quitman county met as required by law to do in the beginning and revised, corrected and reviewed the realty assessment roll of that county, then after having approved it and rendered a judgment, which may be compared to an interlocutory decree approving the roll, the roll was then sent in conformity with the law to the state tax commission; that commission went over the

roll presumably, and returned it to the board of super-
visors of Quitman county with instructions to raise the
several classes of property certain amounts as indicated
in their order provided that in so doing the board should
preserve equality and uniformity and should not exceed
the true value of any item of property, in an effort to
comply with this order of the commission the board of
supervisors convened, and examined, the roll, heard the
objections of sundry taxpayers, considered the value
of each specific item of property belonging to each of
the several classes, and after full consideration deter-
mined the property of that county and of the several
classes already assessed at its full value and that for
that reason the directed raise could not be applied; the
board then adjourned.  Thereafter the commission act-
ing in the name of the state upon the relation of the
attorney-general made application to his Honor Judge
Wm. A. Alcorn for a writ of mandamus to require the
board to carry out the orders of the commission in
accordance with the law in such cases made and pro-
vided, to the petition for writ of mandamus the board
of supervisors interposed a demurrer, upon the hearing
of the demurrer it developed that the board of super-
visors of Quitman county had not given the required
notice and had not held that meeting for the purpose of
carrying out the orders of the commission in the man-
ner prescribed by law.

As stated in the outset my associates in this case
have cited innumerable authorities to the effect, first,
that the writ of mandamus will not lie to control the
exercise of its discretion by another court; this has
been too frequently adjudicated to require further ci-
tation of authority than that contained in the brief re-
ferred to.  It therefore occurs to me that if the board of
supervisors as a court with jurisdiction over the sub-
ject-matter and with the discretion to exercise that

jurisdiction, it cannot be controlled by mandamus. On the other hand, if the court should overrule its former opinion and hold that the legislature has taken away from the board of supervisors its judicial character and deprived it of the jurisdiction to exercise its discretion, then, secondly, there is no legal assessment because the individual property owner is deprived of the rights guaranteed to him under the "due process of law clause" of the state and Federal constitutions and reasoning from this it would follow, in my judgment, either that the circuit court was without jurisdiction to enter the writ of mandamus in so far as it was sought by that writ to control judicial discretion of the board, or that the act itself is unconstitutional and that for either of these reasons a prosecution for contempt would not lie against persons who might decline to obey an order directing obedience either where the court was without jurisdiction or where the law was unconstitutional.

For the right of these defendants to question in this proceeding the jurisdiction of the court to enter the order directing the writ of mandamus, we refer to the authorities cited in the brief of associate counsel.

In submitting this case I direct the attention of the court again to the answer of these defendants made to the citation for contempt in support of the assertion that this board is not acting contumaciously, is not seeking to be arbitrary, and to the further fact that there is no charge of corruption or of improper motives. We are merely dealing with a situation wherein there is a clear conflict between two lawfully constituted bodies, and this court is called upon to determine the relative rights of each and to point out the respective duties of each under the law in order that each may proceed to function in accordance with the directions of the court.

*Frank Roberson, Robt. B. Mayes, Clayton D. Potter* and *Wells & Jones,* for appellee.

There is but one question presented for determination in this case, and that is whether or not the order of the state tax commission in changing the assessments of different classes of property in the different counties in order to equalize the valuations can be enforced by a writ of mandamus.

Our contention in this case is that this is a foreclosed question absolutely settled and determined in the mandamus suit of *State* v. *Wheatley,* 113 Miss. 555.

It is the contention of the board of supervisors of Quitman county that after having received the orders of the state tax commission to increase the assessment of the particular classes of property that if that board meets in accordance with the orders of the state tax commission and finds in its judgment that each and every piece of property of the particular class in the county is assessed at its full value, that then it is the duty of the board of supervisors of that county to decline to enter the increase ordered by the state tax commission.

This contention of the appellants seems to be based entirely on a misconstruction on their part of the *Wheatley case, supra.* The language of the opinion upon which the impression of appellants is founded is as follows: ''In complying with this order the local board is not denied the right to hear the complaints of individuals, and to refuse to increase the assessment of any particular individual whose property is already assessed at actual value.''

Now it is the contention of the appellants that if they have the right to determine that any particular or individual property has been assessed at its full value that it, therefore, follows that the board of supervisors have the authority and power to determine whether each

and every individual's property has been assessed at its true and correct value, and that in this case the appellants met as they were required to do and again went over the assessment roll of the several classes of property mentioned and examined the valuation placed upon each and every class of property belonging to each and every individual in each of the above classes enumerated and found that, in their judgment, every taxpayer was already assessed at one hundred per cent valuation on his property, and therefore, that it was impossible for them to distribute the additional percentage equitably.

This interpretation of the law would, of course, nullify the law and place the equalization of assessments again exclusively in the various boards of supervisors, and this situation is readily conceded by the able counsel for appellants. The phrase above quoted, isolated and disconnected with the entire opinion, would furnish some plausibility for the position assumed by the appellants, but the meaning of the court is made clear in the very next sentence. The court follows the phrase above quoted by the following language: "This does necessarily mean that the local board should not increase the grand total of the class. It is their duty to increase the grand total of the class in accordance with the instructions of the state board, but in making the increase to distribute the burden equitably amongst the members of that class, this construction of the statute frees it from the charge that it violates the due process clause of both the state and federal constitution, and renders the act in this regard constitutional."

"It is our contention, therefore, that in making assessments that the total value of any class of property when once fixed by the state tax commission for any county is conclusive in so far as the total valuation of such property is concerned for such assessments. In

other words, for assessment purposes there is a con-
clusive presumption of law that the finding of the valua-
tion of any class of property in a county by the state tax
commission. is correct.  The apportionment, however, of
the increase, or of a decrease, as ordered of the indi-
vidual taxpayer is confided to the various boards of
supervisors.  Appellants have no standing in court for
this reason;  they have failed to meet the statuory re-
quirements.

Presumptively the assessments of the state tax com-
mission were correct.  See the very recent case of
*Robertson, State Revenue Agent,* v. *W. S. Nursery,* 83
So., 307.  The whole question in this case after all, is
in whom has the legislature placed the finality of deci-
sion.  In other words, did the legislature make it option-
al with the boards of supervisors to enter the orders of
the state tax commission as the boards of supervisors
in their judgment thought proper or did the law require
the board of supervisors to enter orders of the state
tax commission increasing or decreasing the assessments
as the case may be.

There can be no question as to where finality rests
for section 6, chapter 98 Laws of 1916, provides that if
the president of the board of supervisors of any county
appeared with the five witnesses, etc., and had been
heard by the state tax commission that: ''The decision
of the board of state tax commissioners then made shall
be final and upon the rendering of their decision it shall
be the duty of the board of supervisors to immediately
revise and correct the county valuation, in the manner
hereinbefore in his section contemplated and provided.
The revised and corrected  property valuations  thus
made shall be the fixed and legal valuation of the prop-
erty for the payment of the taxes and it shall be the
duty of the taxpayer to pay his taxes thereon according-
ly.''

Now this statute has been declared constitutional, valid and enforceable by the supreme court of Mississippi in the *Wheatley case, supra.*

It is our contention that the matter of fixing the aggregate value of each class of property for each county in the state is a matter confided to the judgment of the state tax commission by this statute. On the other hand, how this burden shall be apportioned amongst the various taxpayers in the different counties in the state is a matter of which the board of supervisors of the various counties have absolute control, and which is a matter confided to their judgment alone.

The injunction throughout the tax commission law that property shall not be assessed at more than its true value, and making the true value of the property the criterion for assessment is but repeating the constitutional provision that property shall be assessed at its true value, and these provisions are binding on every equalization board and upon the juries and the courts and everyone else who have to do with fixing assessments. However, the authority to determine what the true value is must necessarily be placed somewhere and the determination of the aggregate value of each class of property in the different counties has been placed by the statute in the state tax commission, but the right to equalize between individuals yet remains in the various boards of supervisors of the different counties of this state.

We respectfully submit that this case ought to be affirmed on both appeals for the only question presented is foreclosed by the decision of this court in the Wheatley case, and for the further reason that the board of supervisors have not even done those things that the statute pointed out as necessary to do when dissatisfied with the assessments, for they failed to come before the state tax commission with the witnesses as they were required to do and to give the tax commission

an opportunity to correct any error made by them. Surely the appellants in this case will not be permitted to appeal to the courts when they failed to give the state tax commission an opportunity to correct their error, if the tax commission was in error.

Because the terms of office of the members of the board of supervisors have expired, that portion of the sentence that requires them to stand committed until the mandamus is obeyed, will probably have to be eliminated from the judgment of the court, but the fine of dollars and costs should stand.

We respectfully submit that the case ought to be affirmed both as the original judgment of the lower court and the contempt proceedings.

SYKES, J., delivered the opinion of the court.

This suit was begun by petition of the state of Mississippi upon the relation of Ross A. Collins, attorney-general, praying the issuance of the writ of mandamus against appellants as members of the board of supervisors of Quitman county, to compel them to make an increase in the valuation of certain classes of real property upon the assessment roll in that county as follows: Cultivatable lands, ten per cent.; buildings and improvements thereon, ten per cent.; timbered lands, including timber, forty per cent.; uncultivatable lands, thirty-five per cent.; real estate in cities, towns, and villages, eighty per cent.; buildings and improvements therein, seventy per cent.; in accordance with an order of the state tax commission dated September 9, 1919, reading as follows:

"It appearing to the satisfaction of the state tax commission of the state of Mississippi, after visiting the several counties of the state, conferring with the assessors thereof, and studying the values of the various classes of property therein, the economic conditions thereof, and the methods employed by the assessors and supervisors in making and equalizing the assessments

thereof, and after making a careful examination of the recapitulations of the assessment rolls of real and personal properties of the several counties and a comparison of the assessments therein contained, that it is necessary that the foregoing percentages be added to or taken from the assessments of the various classes of real and personal properties on said assessment rolls of Quitman county, for the tax year of 1919, as shown by the foregoing statement (appearing on the reverse side hereof), in order that the assessments in said county be equal and uniform with those in the other counties in the state: It is therefore hereby ordered, in compliance with the requirements of chapter 98 of the Laws of 1916, as amended by chapter 135 of the Laws of 1918, that the foregoing percentages (appearing in the foregoing statement on the reverse side hereof) be and they are hereby added to or taken from the said assessments of the real and personal property of said county, respectively, as shown by said foregoing statement, and that the chairman of said commission mail a copy of these instructions to the board of supervisors of said county to proceed in accordance with the requirements of said chapter and amendment thereto, to make the changes in accordance with this order in the assessments rolls of real and personal properties of said county for the year 1919, overvaluing no property and equalizing the assessments so that every assessment will bear an equal proportion to value.''

The petition alleges that the total increase in the value of real property in Quitman county ordered by the state tax commission amounts to one million, ninety-six thousand, three hundred and four dollars; that the assessed value of the real property of this county, with the percentage of increase ordered by the state tax commission, would then only about equal in amount the assessed valuation of the real property as made by the tax assessor of that county; that the assessed

valuation of real property in Quitman county as approved by the board is much less and much below the true value of such property, and that the assessed valuation of this property as approved by the board is much less than the assessed valuation of like property in other and adjoining counties of the state; that the increase in valuation, ordered by the tax commission on these classes will in none of them cause the same to be assessed at a value in excess of its true value, or in excess of the assessed valuation of like property in other and adjoining counties. The petition alleges the giving of the notice to the board of supervisors as required by law; that there was no protest by the board of supervisors against the increased valuation of these classes of property, or any dissatisfaction expressed by it as to the corrections and changes ordered by the state board, and no witnesses were appointed to appear to protest before the state board, in accordance with section 6, c. 98, Laws of 1916, creating and defining the duties of the state board.

The petition alleged a total failure upon the part of the board of supervisors to comply with its order. It further alleges that it is the plain ministerial duty of the board of supervisors to make the changes ordered and directed by the state tax commission; that the said board on October 7, 1919, passed an order declining and refusing to comply with the order of the tax commission and to make the changes.

A demurrer was filed to the petition and overruled by the court. It is unnecessary to state the grounds of the demurrer, as those material will be disclosed further on.

Upon the overruling of the demurrer the court issued the writ of mandamus directing the members of the board to comply with the order of the state tax commission and make the increases in the assessed valuation of the classes of property named. The president

of the board was further ordered to call a meeting of the board as required by section 6, chapter 98, Laws of 1916, and at said meeting the board was ordered by the court to conform to the instructions of the state tax commission above set out, and to take all necessary steps to comply with the writ of mandamus and the instructions of the tax commission not later than the 19th day of November, 1919.

The state at a later date filed a petition in this case citing briefly its history and stating, in substance, that the members of the board of supervisors of Quitman county had failed to obey the writ of mandamus, but had passed an order declining and refusing to comply with the directions of the court contained in said writ. In this petition it was asked that the members of the board of supervisors be adjudged in contempt of court and punished accordingly. A copy of the order of the board of supervisors was attached to this petition. This order of the board shows that they held a meeting as ordered by the circuit court, after due notice of same had been published. This order shows that the board took up for consideration the several classes of real property ordered increased by the state board; it shows that the board considered each and every individual assessment of property ordered increased and found that the objections presented by the several property owners were well founded, and sustained these objections and approved the assessments as previously made.

It further recites that the board had carefully examined the assessment of property of each of the foregoing classes, and having determined the assessable value of each specific item of property of each of said classes doth now order and adjudge the specific value of each item of property of each of the foregoing classes to be shown upon the assessment roll aforesaid; that—

"The board of supervisors of Quitman county having approved the several assessments of the sundry items of real property of Quitman county, Miss., and in the exercise of their judgment and discretion having declined to increase the assessed valuation of the property belonging to the several individual property owners, finds itself unable to increase the grand total of aggregate value of the property of each of the said classes of property, and for that reason unable to comply with the order of the state tax commission directing a total of aggregate raise in the total valuation of the properties of the said several classes and unable to raise the aggregate valuations in compliance with the order of said tax commission."

To this contempt proceeding the members of the board of supervisors filed an answer setting up, in substance, that they attempted to comply with the writ of mandamus by the meeting whose proceedings we have briefly above stated; that at said meeting they examined the several assessments of individual items of property as shown on the assessment roll, and attempted to determine the true, correct, and fair assessable value of each item of taxable real property, and to assess each item accordingly and in accordance with the law, the order of the state tax commission, and the mandate of the circuit judge; that having done so the board found it impossible to increase the aggregate value of the several classes of real property to the extent directed unless the board should enter an order directing a horizontal increase in value; that such a horizontal raise would be violative of both the Constitution and statutory law, and contrary to the order and instructions of the state tax commission and of the circuit court, and to make such an increase would result in the assessment of certain specific items of property greatly in excess of the true value of the property.

Defendants denied that they had disobeyed or disregarded the mandate of the court; that one of the duties and powers conferred upon them is to fix and determine and to adjudicate, as between the individual property owner and the state, the correct value of property for purposes of taxation, and to enter their judgment or finding upon the realty assessment roll of said county, and to make oath to the correctness of their judgment; that to the best of their knowledge, belief, and ability they have exercised their discretion in the discharge of this duty. Defendants then asked that the writ of mandamus be made more specific and certain, and that they desire to be informed whether or not they are to increase all property horizontally and are to be denied the right to pass upon the valuation of specific items of property; that if it is not to be a horizontal raise the court or the tax commission is to point out the specific property upon which the increase is to be applied. The answer is quite voluminous, but we have above set out the material parts of it.

The contempt proceedings were heard on the petition and exhibits and the answer of the defendants and exhibits, and the defendants were adjudged to be in contempt of court for failing to fully comply with the writ of mandamus, and were sentenced to be confined in the county jail of Quitman county until they had complied fully with the writ of mandamus and the order of the state tax commission, and, in addition thereto, each member was sentenced to pay a fine of $10 for disobedience to the said writ.

By this appeal we are again called upon to construe the certain portions of chapter 98 of the Laws of 1916 creating a state tax commission and defining its powers and duties. There is but one real question involved in this appeal, and that is whether or not by this act the state tax commission is given the absolute authority to order the board of supervisors to raise or

lower the assessments on certain classes of property which in the judgment of the state tax commission are either over- or underassessed when compared with the property of the same classes in other counties. In other words, as between the state tax commission and the board of supervisors, which one of them has the superior or final judgment to say whether or not property or classes of property in a county are properly assessed, overassessed, or underassessed. It is the duty of the board of state tax commissioners to equalize the taxes among the different counties of the state. The board of supervisors is the equalizer of the assessments of the individuals. The state tax commission is the equalizer of the assessments among the different counties.

The powers to equalize assessments given both the board of supervisors and the state board are purely statutory. No constitutional privilege to equalize assessments is conferred upon the board of supervisors by the Constitution; neither is any such power conferred upon the state tax commission. It therefore rests entirely with the legislature to bestow so much or so little of this power as it may see fit upon either board.

By section 112 of the Constitution property cannot be assessed for more than its true value. This inhibition is binding upon both the state board and the board of supervisors. Prior to the passage of the state tax commission law the boards of supervisors were given power to equalize all taxes within their county. This discretion was vested in them, and a dissatisfied taxpayer was given the right to appeal in case he thought his assessment improper.

Chapter 98 of the laws of 1916 (section 5) confers upon the board of state tax commissioners the power to examine the assessment roll of the several counties, to compare them for the purpose of ascertaining the

tax valuation of the various classes of property as made in the respective counties of the state, and to ascertain if the same be reasonably uniform, and if it shall appear to this board that in any of the counties the taxable value fixed upon any one or more classes of property are not uniform with the same classes of property in other counties, the board of state tax commissioners must investigate the facts and are authorized to adjust and equalize the same, either by adding a fixed per centum to the assessed valuation of any class of property which is too low, provided such raise shall not exceed the actual value of the property in any case, or correspondingly they may order a reduction. They must then notify the president of the board of supervisors of the county affected that the county valuation upon these classes of property shall be raised or lowered. Under this section the state tax commission board is given the authority to pass upon the valuations of the classes of property as shown by the assessment rolls of the different counties, and to order an equalization of these assessments either by ordering an increase or a decrease in the assessment of certain classes of property in certain counties.

Section 6 of this act provides for the calling by the president of the board of supervisors of a meeting of the board in the county ordered to change its assessment. This section then provides that—

"At the said meeting the said board shall correct the county valuation upon the class or classes of property specified by the board of state tax commissioners, so as to make the same conform to the findings of the said board of state tax commissioners by applying uniformly to the specified class or classes of property the fixed increase or of decrease specified by the said board of state tax commissioners, and by raising or lowering all the individuals' returns of all the taxpayers of the

county upon the specified class or classes of property accordingly.''

When a meeting of a board of supervisors is held in pursuance of this part of section 6 it is the duty of the board to consider the individual assessments of the taxpayers whose property is affected by the order of the state board of equalizers. Each individual taxpayer of this class has a right to be heard before the board, and it is the duty of the board to equalize among these individual taxpayers the assessment of their taxes on the classes of property affected. If by this equalization, however, the aggregate amount ordered to be increased on this class of property by the board of state tax commissioners is not thereby raised, then the board of supervisors must distribute equitably among this class of taxpayers an increase in their assessments which will produce the amount of money called for by the order of the state tax commission. Assuming that the board has equalized the assessment among the individuals of the classes of property to be affected by this increase, and that in this equalization the aggregate amount called for by the order of the state board has not been raised, then there is nothing left for the board of supervisors to do except to apply a horizontal raise to the property of this class. By this law the decision of the board of state tax commissioners as to the value of the classes of property of the various counties is binding upon the boards of supervisors. By section 6 of this act it is further provided that where there is a contest before the board of state tax commissioners by the board of supervisors:

''The decision of the board of state tax commissioners then made shall be final and upon the rendering of their decision it shall be the duty of the board of supervisors to immediately revise and correct the county valuation, in the manner herinbefore in this section contemplated and provided. The revised and corrected

property valuations thus made shall be the fixed and legal valuation of the property for the payment of taxes, and it shall be the duty of the taxpayer to pay his taxes thereon accordingly.''

In other words, as between the board of state tax commissioners and the board of supervisors, the decision of the board of state tax commissioners ordering an increase in the value of certain classes of property is final. There is no discretion vested in the board of supervisors about making this increase. It is its duty to do so. As between these two boards, the state tax commissioners has the power to find and say what the true valuation of the classes of property named in its orders are, and this judgment is final so far as the board of supervisors is concerned. It must accept this finding of the state tax commission whether it thinks it too much or too little. So far as any discretion in this matter is concerned, by this act creating the tax commission this discretion is expressly taken away from the board of supervisors and vested in the state tax commission. when the board of supervisors meets to comply with the orders of the state tax commission it has no discretion whatever in raising the requisite amount of revenue on the class of property therein named in the order of the state tax commission. Its only discretion is to again go into the question of equalizing the relative value of this class of property among the individual taxayers. When this equalization has been made and the amount called for by the order of the state tax commission has not been raised, then the balance of this amount must be raised by the board of supervisors by applying equitably what would then necessarily be a horizontal raise to this class of property.

In other words, by chapter 98 of the Acts of 1916 the state tax board is given the final decision, as between these two boards ,as to the assessable valuation of the

classes of property mentioned in its order. When equalization among individuals has been made, the board of supervisors then merely has a ministerial duty to perform, to raise horizontally the balance due as called for by the order of the state tax board. The aggrieved taxpayer, if by this order of the state tax board his property is overassessed, is given a right of appeal by chapter 120 of the Laws of 1918, amending section 81 of the Code of 1906.

In the case of *State* v. *Wheatley,* 113 Miss. 555, on page 592, 74 So. 427, on page 430, in construing section 6 of this act, the court, through Judge Stevens, said:

"By the terms of this section the board of supervisors are not directed to increase every individual taxpayer and fix an arbitrary percentage, but distributes the burden of increase amongst the individual taxpayers within the class of property affected by the order. . . . In accomplishing this increase of total valuation, the board of supervisors are accorded the absolute right to distribute the burden of increase uniformly amongst the taxpayers of that class."

Again, on page 593 of 113 Miss., on page 31 of 74 So.:

"As to the class of property upon which the increase is ordered, there is no final adjudication until the local board has complied with the order of the state board. In complying with this order, the local board is not denied the right to hear the complaints of individuals, and to refuse to increase the assessment of any particular individual whose property is already assessed at actual value. This does not necessarily mean that the local board should not increase the grand total of the class. It is their duty to increase the grand total of the class in accordance with the instructions of the state board, but in making the increase to distribute the burden equitably amongst the members of that class."

121 Miss.—51.

Again, at the bottom of page 595 of 113 Miss., on page 432 of 74 So., in construing the latter part of section 6 of this act, it is said:

"Certain it is that if the state board refuses to rescind the order the local board must return to their county and make the corrections; and in doing so it is their duty to equalize the additional increase of burden amongst the taxpayers affected by the order. . . . The statute under review in no wise undertakes to equalize as between individuals, but exclusively between counties. At the same time it does not either expressly or by implication supersede the jurisdiction of the local board to equalize as between individuals, and nowhere does it take away the right of the individual to an appeal."

It is contended by the appellants that by the order of the state board of equalization the board of supervisors were enjoined in the last clause of this order to overvalue no property and equalize the assessment so that every assessment will bear an equal proportion to value. This part of the order merely means that they must not overvalue any property of the individual when considered in connection with the value of the same property of other individuals in the county. In other words, that they must be careful to equalize the value of the individuals in the county, and if the property of one be overvalued when considered in connection with the property of another, this overvaluation or inequality should be corrected. Section 112 of the Constitution carries this same inhibition, as also does section 5 of the Act of 1916, chapter 98, which reads as follows:

"Provided, such raise shall not exceed the actual value of the property in any case."

This adds nothing to and takes nothing from the order of the commission, but is merely a part of the constitutional and statutory law of the state which prohibits the overvaluing of property for taxation.

Chapter 98 of the Laws of 1916 was amended by chapters 135 and 228 of th Laws of 1918. These amendments are not before us in this case. Under section 6, chapter 98, Laws of 1916, it is mandatory upon the board of supervisors to make the increase in the aggregate value of the classes of property affected in accordance with the order of the board of state tax commissioners. They have no discretion whatever in the matter. It is their duty to comply with this order.

The state had no plain, adequate, and speedy remedy in the ordinary course of law by which it could compel this board to comply with this order; consequently mandamus was the proper remedy to pursue. The same remedy was pursued in the *Wheatley Case, supra.* *Moreau* v. *Grandich,* 114 Miss. 560, 75 So. 434; *Herbon* v. *Lawrence Co.,* 109 Miss. 397, 69 So. 209, L. R. A. 1916B, 622. Ann. Cas. 1917E, 410; *Ross* v. *Wimberly,* 6? Miss. 345 ;*Klein* v. *Smith Co.,* 54 Miss. 254.

The judgment of the lower court finding the defendants to be in contempt of court is affirmed. Their terms of office however having expired, that part of the order remanding them to jail is stricken out. Affirmed, with this modification.

*Affirmed conditionally.*