## A. M. McDONALD et al. v. E. MURPHREE et al.

1. TAXES — INJUNCTION — JURISDICTION OF EQUITY. — The allegation in a
bill that the tax collector is about to proceed to collect an illegal tax will not
confer jurisdiction on a court of equity.

2. SAME — WHAT WILL WARRANT INJUNCTION. — To warrant an injunction of
the collection of a tax there must be some special circumstances attending a
threatened injury of this kind, distinguishing it from a common trespass, and
bringing the case under some recognized head of equity jurisdiction.

3. SAME — WHEN COURT OF EQUITY WILL INTERFERE. — Courts of equity will
interfere in such case to prevent irreparable mischief, or to suppress multiplicity
of suits and expensive litigation.

4. SAME — SAME. — It is only where there is no adequate remedy at law that
courts of equity will interfere to restrain the collection of a tax.

5. SAME — CASE CITED AND CONFIRMED. — The case of Coulson v. Harris, 43
Miss. 728, cited and declared to be decisive of this case.

APPEAL from chancery court of Calhoun county. COF-
FEY, Chancellor.

The tax sought to be enjoined in this case was one levied
in aid of a railroad. All of the other facts, out of which
arose the question decided by the court, are contained in
its opinion.

The counsel on both sides filed elaborate briefs, arguing the other questions in the case, which were made in the court below, but, as this court decided the case solely on the questions of jurisdiction, only so much of the brief of counsel is inserted as pertains to this question.

*E. S. Fisher*, for appellants.

It is insisted for the first time in this court that the question has already been settled as to the jurisdiction of the court of chancery to enjoin the collection of a tax. My answer to this argument is, that this is not a tax within any of the definitions given in the books. A tax is the means of raising money to support government, and the term "government" may mean the government of the state, or the municipal subdivisions of counties, towns and cities, and still this is not a tax, because it is not assessed and collected to support either the state government or any of the municipal governments enumerated. It was not necessary, nor was it intended, to enable the board of police to perform its duties or exercise its jurisdiction as defined by the constitution and laws of the state. The simple object was to enable the board of police to embark in a private enterprise entirely foreign to its jurisdiction, by subscribing for stock in a corporation over which the board could exercise no other or greater jurisdiction than any individual of like amount of stock could exercise. The board of police, so far as its connection with the railroad is concerned, is a *quasi* corporation, without one single judicial attribute. A corporation is, in law, a person, and the board being in this particular case a corporation, may be treated as a person. As a corporation or as a person, the board has done an act outside of its jurisdiction, making it necessary to raise money, and the sole question to be considered is, whether the board can exercise its taxing jurisdiction to raise money to foster objects wholly unauthorized by its legitimate jurisdiction. It can tax to build a bridge, because a bridge is within its jurisdiction, and so in regard

to any other matter within its jurisdiction, and this would be properly called a tax, because it would be for a purpose furthering objects of government. But how is it when you come to the building of a railroad ; the legislature, it is true, grants the charter, but the authorities are unanimous that laws creating corporations must be strictly construed. Next comes the special act of February 10, 1860, permitting the board of police, upon certain contingencies, to subscribe for stock in this road. This act, in turn, must also be strictly construed, because it creates a new and special jurisdiction, and because, as to this particular purpose, it makes the board of police a corporation, whose powers must also be strictly confined to the very purposes of the law. What then is this tax for ? Answer : to pay for stock in a corporation, which is in law a person, and although the people of portions of the county may derive some benefit or convenience from the railroad, it is, nevertheless, a private enterprise, whose profits will be enjoyed entirely by the stockholders and not by the public. The board of police could, with as much propriety, levy a tax to build a cotton factory because it might tend to afford a home market for cotton, or to build churches in the county because they would tend to improve the morals of the people, as for the purpose of aiding a railroad. Indeed, the cases supposed are much more plausible than the case under consideration.

But, if the court venture upon the rules of construction, then I say that this law has for its object the compulsion of the people to become stockholders in this corporation whether they are willing to do so or not. The third section of the law declares that, when any person shall have paid $50 on account of the tax, that stock, to that amount, shall be transferred to him in the road. Suppose the law had declared that every person in the county owning $1,000 worth of property should subscribe and pay for $50 of the stock in this road, how would such a law be viewed by the court ? Would it be a law for the raising of revenue for any purpose connected with either state government or the munic-

ipal government of the county? Such is the practical
working of the law. Its object is to force people to make
contracts. Obligations exist by virtue of the free consent of
the parties, or they arise out of duties created by law. This
latter class may be called taxes. The mission of govern-
ment is to protect the citizens, who, in turn, must contribute
to the support of the government. This contribution is reg-
ulated by law, and is called a tax; and this is the tax which
cannot be enjoyed or interfered with by a court of chan-
cery. In the case under consideration, the money, by the
very terms of the order, is to be paid to the president,
directors and company of the railroad. The government
has nothing to do with it. As to the strict construction of
statutes, see Olcott v. Robinson, 20 Barb. 148; Sedgwick
on Stat. and Const. Law, 348, 353, 354, 355. As to special
jurisdiction, see Ballard v. Davis, 31 Miss. 525; Williams
v. Cammack, 24 ib. 220; Deane v. Leake County, 42 ib. 237.

*Walthall & Golladay,* for appellees.

The first ground of demurrer is fatal to the bill. A court
of equity has no jurisdiction of a case like this. Coulson
v. Harris, 43 Miss. 738.

*T. N. Martin,* on same side.

The power to levy and collect taxes, general and special,
is indispensably necessary to the existence of a government.
Without such power the government would be but a rope
of sand. A government can be sustained only by the exer-
cise of the taxing power, uncontrolled otherwise than by
the legislature. Well, under the checks of the ballots of
the people, legislators are presumed to be the fair exponent
of the popular voice, and should they, at any time, misrep-
resent the popular will in the exercise of the taxing power,
the corrective is found at the ballot-box; it is not in the
courts. It is true, under our system, the government exists
by a written constitution; and the actions of all the agents
employed to administer the government are controlled by

that constitution. But as an incident of power, indispensable to the perpetuation of the government, that constitution confers upon the legislative department the exclusive power to levy and collect taxes within this state; the courts have no such power, nor can the courts restrain or control the legislature in the exercise of that power further than to declare the law unconstitutional. If an officer of the law violates the law by a levy or collection of taxes contrary to law, such defaulting officer is amenable to the courts for such default or malfeasance in office. The courts can only construe and administer the law by inflicting the proper penalties upon the offender against the law. It would endanger the very existence of the government to give to the courts the power to prevent the collection of taxes imposed by law. He that would stop or destroy the government need only stay the hand of the collector of its revenue and the destruction of the government would be complete. But with the taxing power in the legislature, uncontrolled by the courts, the government will remain so long as the people will its continuance.

It is true the railroad tax involved in the case at bar is a special tax, and its collection or rejection will in nowise affect the status of the government of Mississippi, but the principles which would direct the practice of enjoining its collection through the courts would render the government unstable, and place its existence in the future at the will of a few chancellors who are but men, no less liable to err than other men. Being then wrong in principle and dangerous in practice, let it be judicially declared by this the court of last resort, that the power to enjoin the collection of taxes belongs not to the chancery courts in this state.

PEYTON, C. J. :

Archibald McDonald and Miles F. Ross filed their bill of complaint in the chancery court of Calhoun county, against C. E. Murphree, sheriff and tax collector of said county, and others, for an injunction restraining the collection of a tax,

alleged to be illegally assessed. The bill states that the board of police of said county levied a tax of four hundred and fifty per cent on the state tax of 1869, to be collected for the year 1870, which is alleged to be illegal. The bill further charges, that the tax collector will proceed to collect the same, unless restrained therefrom by injunction. To this bill the defendants demur, and assign for one cause of demurrer, among others, the want of equity upon the face of the bill. The court, for this reason, sustained the demurrer, and dismissed the bill at the costs of the complainants, who appeal to this court, and assign for error the action of the court below in sustaining the demurrer and dismissing the bill. Assuming the tax to be illegal, we do not think any ground is presented by the bill justifying the interposition of the court of equity to enjoin its collection. The illegality of the tax, and the threatened sale of property for the payment thereof, constitute of themselves no ground for such interposition. There must be some special circumstances attending a threatened injury of this kind, distinguishing it from a common trespass, and bringing the case under some recognized head of equity jurisdiction, before the preventive remedy of injunction can be invoked. In all cases involving simply the question of taxation, the issue is simply one of common law, and courts of equity can take no cognizance thereof. A party aggrieved by illegal taxation has ample remedy at law, and need not have recourse to a court of equity. The unlawful collection of a tax is a mere trespass, not to be enjoined without allegation and proof of irreparable injury therefrom. Courts of equity interpose in cases of trespass, for the purpose of preventing irreparable mischiefs, or to suppress multiplicity of suits and oppressive litigation. For if the trespass be fugitive and temporary, and adequate compensation can be obtained in an action at law, there is no ground to justify the interposition of courts of equity. 2 Story's Eq. Jur., 117, § 928.

No court of equity will, therefore, allow its injunction to

issue to restrain the collection of a tax, except where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. In the case of Dows v. The City of Chicago, 11 Wall. 108, 110, the supreme court of the United States say : "It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or, where the property is real estate, throw a cloud upon the title of the complainant, before the aid of a court of equity can be invoked. In the cases where equity has interfered, in the absence of these circumstances, it will be found, upon examination, that the question of jurisdiction was not raised or was waived." The court further say, in that case, that "numerous cases are found in the reports where jurisdiction has been taken under similar circumstances and the collection of an illegal tax restrained, but our attention has not been called to any well-considered case where a court of equity has interfered by injunction after its jurisdiction was questioned, except upon some one of the special circumstances mentioned."

The equitable powers of the court of chancery can be invoked only by the presentation of a case of equitable cognizance. There can be no such case where there is a plain and adequate remedy at law. Here such remedy exists. Bills of this kind can be entertained only where the collection of the tax would be likely to produce irreparable injury or cause a multiplicity of suits. In the case under consideration, no irreparable injury would result to the tax payer from the collection of the tax. Nor would he be compelled to resort to a multiplicity of suits to determine his rights. There is nothing in this case to take it out of the doctrine of the case of Coulson v. Harris, 43 Miss. 728.

We can perceive no ground for the interposition of a court of equity which would not equally justify such interference in any case of threatened invasion of real or personal property.

*The decree is affirmed.*