GRENADA COUNTY SCHOOL BOARD, et al. *v.* PROVINE, et al.

No. 39700   June 13, 1955   80 So. 2d 798

July 15, 1955           81 So. 2d 694

*Wells, Thomas & Wells, Roland D. Marble,* Jackson; *Marshall Perry,* Grenada, for appellants.

*Bradford J. Dyc,* Grenada, for appellees.

APPELLANTS IN REPLY.

LEE, J.

This was a suit by John S. Provine and forty others against Preston Vance and the other members of the

Grenada County School Board and the superintendent of education of the county. It was alleged in the bill that the complainants are "all adult residents and citizens of Grenada County, State of Mississippi, property owners, taxpayers, and patrons of the Mt. Nebo and Cole's Creek Area, Common School Districts of Grenada County, Mississippi, herein suing for themselves individually and as representatives of all who are similarly situated in said Common School District or area in said County and as representatives of a class who may desire herein to appear"; that for many years, the Cole's Creek area has been considered a part of the Mt. Nebo School District; that on August 14, 1943, at a lawful meeting, the Grenada County School Board made the following order: "Being unable to locate teacher for Mt. Nebo School upon proper petition by said trustees to trustees of Big Creek School and their acceptance Board ordered said children be sent to Big Creek School"; that, pursuant to such order, the Trustees of Mt. Nebo School, by proper action and with the approval of the Trustees of Big Creek School and the County Superintendents of Grenada and Calhoun Counties, provided for the transfer of all pupils in the Mt. Nebo and Cole's Creek area to the Big Creek School in Calhoun County "all as provided by law"; that each year thereafter, the children in those districts have attended the Big Creek School, and the Grenada County School Board has paid all transportation, tuition and lawful charges therefor; that the board on July 14, 1952, selected Hugh Rouse Clark to drive the Mt. Nebo and Cole's Creek bus to the Big Creek School, and ordered payment of $1,000 to Calhoun County for the 1952-1953 session.

It was further alleged that, on June 4, 1953, the board adopted the following order: "Mr. Vance moved Mr. Martin seconded that the County pay transportation and tuition same rate as last year costs to Big Creek Consolidation School in Calhoun County for the children of the Mt. Nebo and Cole's Creek Districts for the year 1953-

54 school session and 1954-55 transportation be furnished to Gore Springs in this County. Motion carried. Mr. Havens did not vote''; that complainants thereafter presented a practically unanimous petition to the board for every adult person in the district against the change, but that the board did not rescind its action. Many reasons, including economic, scholastic, cultural, religious, and public convenience were given for the continuance of the transportation of the children to Big Creek School.

The principal prayer of the bill was for a mandatory injunction to require the defendants to pay the transportation, tuition and legal charges for the attendance of the pupils of Mt. Nebo and Cole's Creek Districts in the Big Creek School so long as said pupils may lawfully attend that school.

The defendants filed a demurrer, raising two grounds: (1) There is no equity on the face of the bill; and (2) the bill states no basis or grounds for injunctive relief.

The bill of complaint had been filed on August 20, 1954, prior to the beginning of the 1954-1955 session, and the cause was heard on September 2, 1954, on bill and demurrer, and by agreement of the parties, as though on bill, answer and proof. The court overruled the demurrer, granted the relief as prayed for, and the defendants appealed.

The demurrer, of course, admitted the truthfulness of all facts which were well pleaded.

It will be seen that the gist of the allegations of the bill was that the school children in the area in question had been properly and legally enrolled in the Big Creek School in 1943 and had attended that school ever since; that the Grenada County School Board had paid the lawful charges for such attendance over the years; that it did not order these children to be enrolled in the Gore Springs School, but simply ordered that transportation should be furnished to them to Gore Springs for the session of 1954-1955; that so long as the children were enrolled in Big Creek School, the school board was required

to pay the lawful charges for their education; and that the board was failing and refusing to perform duties which were enjoined upon them by law.

Section 6333, Code of 1942, by Paragraphs 1 and 2 thereof provides the method by which children in one district may attend school in another, as follows: "Attendance outside proper district. — Children residing in any district may attend school in another district either in their own, or in an adjoining county under the following conditions:

"1. With the consent in writing of the trustees of both districts, and of the county superintendent or superintendents, as the case may be.

"2. If the transfer is from a common school to a separate or consolidated district, the county shall pay the district they attend an amount per child equal to the cost per child in average attendance to the county in the public schools for the preceding session, each race being calculated separately."

Section 6336, Code of 1942, also provides in part, as follows: "Transportation from one district to another. — The county superintendent and the county school board are hereby authorized and empowered to provide for the transportation of children living in one district to such school in another district as may be designated by them and to pay the necessary tuition and other expenses into the funds of the school to which the pupils are transported under rules and regulations prescribed by the State Board of Education."

Relief may be afforded against officers who fail to perform their duties under the provisions of Section 6352, Code of 1942, which is as follows:

"Mandamus. — The failure of any officer, trustee, school superintendent or school carrier to perform the duties imposed on him under the provisions of this Act, or by the terms of any contract entered into under the provisions of this Act, shall subject him to mandamus, or other appropriate proceedings in law or equity, for

final adjudication of the matter complained of, though the person aggrieved may have concurrent remedy by appeal to the county superintendent and from that official to the State Board of Education.''

Appellants contend that the appellees had no right to bring this suit because they did not obtain authority, under Sections 2955-2956, Code of 1942, from the board of supervisors.

Under the allegations of the bill, as herein above set out, it was shown that the complainants, in addition to being citizens, property owners and taxpayers, were also patrons — the fathers and mothers of the children, who were being denied transportation to the school in which they were enrolled. By both natural and statutory law, they were of course obligated to secure the rights of their children. Besides they also sued for those who were similarly situated and they also invited all others, who desired to join them. The bill thus conformed to the pattern which was recognized in Tucker v. Daniels, 50 So. 2d 896 (Miss.). In addition thereto, Section 6352, supra, falls in the category of the exception, ''but suit shall not be brought without the authority of the board of supervisors, *except as otherwise provided by law''* in Section 2955, supra. (Emphasis supplied.) It seems clear therefore that the appellees had the right to bring the suit.

Appellants also contend that this suit constitutes an attempt on the part of the court to control the board in the exercise of its discretion; and that the court had no authority so to do unless it was guilty of an oppressive and manifest abuse of discretion.

But this is not a case where the board, in the exercise of its discretion, transferred children from one school to another. What the board did was to deny transportation to these children, who were properly and legally enrolled in the Big Creek School, and on the contrary, provided for their transportation to Gore Springs School without transferring them to, or providing for

their enrollment in, that district. Discretion was not involved. The board simply failed to perform a duty which the law enjoined upon them. Mandamus is proper when there is no adequate remedy to require the performance of an act which the law enjoins. Section 1109, Code of 1942. However, this suit was not filed in the circuit court. But under Section 6352, supra, where there is such failure, the board could be subjected to "mandamus, or other appropriate proceedings in law or equity."

Appellants again complain because they say that, in refusing to furnish transportation to Big Creek School, they were acting under authority of Chapters 12 and 15, Laws of 1953, Ex. Sess.; that the appellees did not exhaust the administrative remedy available to them under Section 9, Chapter 19, Laws of 1953, Ex. Sess.; that they did not exercise their remedy by appeal under Sections 6 (f), Chapter 16, Laws of 1953, Ex. Sess.; that Chapter 12, supra, repealed Section 6333, supra, and Chapter 15, supra, repealed Sections 6336 and 6352, supra; and that these chapters were effective from and after their passage, and that they were approved on Decembr 28, 1953.

Without reference to the effect of the enactment of the statutes in 1953, it is clear that the board was not acting under them when it adopted its order of June 4, 1953, to the effect that transportation would be furnished to Gore Springs for the session of 1954-1955. At that time, the Legislature had not even assembled in session. While contending that the above mentioned legislative acts cut away the rights which the appellees perhaps had prior thereto, of course it is not contended that the board's action in this regard formed a part of the reorganization of school districts, as provided for in such acts. It is obvious that the board, on July 23, 1954, when it declined to recede from the position which it took on June 4, 1953, had not entered upon the reorganization of the school districts in Grenada County.

The extraordinary session of the Legislature was convened on the 3rd day of November 1953. It undertook the Herculean task of rewriting the laws for the government of the public schools of the State. Sixteen different chapters, covering perhaps every imaginable feature in the operation of the public schools, were enacted. They were all made effective from and after their passage, and all of them were approved on December 28, 1953. It is necessary to make reference to parts of only four of these acts.

Chapter 12, provides for the consolidation or reorganization of school districts. Section 1 thereof is in part as follows: "All school districts in existence in the State of Mississippi upon the effective date of this act was hereby abolished, but all such school districts shall continue to exist with all the powers, rights, privileges, and prerogatives thereof as now provided by law until such school district shall be reconstituted or the territory thereof consolidated with other territory as is hereinafter prescribed. As soon as practicable after the passage of this act, and in no event later than July 1, 1957, the county board of education of each county, pursuant ing the educational needs of the county from the standpoint of the efficiency of operating schools and school districts, shall, by an order spread upon its minutes, consolidate the territory of the county in such school districts or reconstitute existing school districts so that all of the territory of such county shall then be included within such school districts as the county board of education shall deem necessary to promote the physical, mental, moral, social and educational welfare of the children involved, the efficiency of the operation of the schools, and the economic and social welfare of the various school areas."

Section 7 (a) thereof is in part as follows: "The boards of trustees of all school districts in this state as constituted and existing upon the date of the passage of this act are hereby continued in office with all of the existing

powers, duties, authority, rights, and privileges thereof until such time as the county board of education of the county in which such school districts are located still create, reconstitute, and consolidate school districts as provided in section 1 hereof, at which time such boards of trustees now existing shall be abolished and discontinued * * *.''

Section 10 thereof repeals Section 6333, supra.

Chapter 15 provides for the transportation of school children at public expense. It repeals Sections 6336 and 6352, supra.

Chapter 16 defines the powers and prescribes the duties of county boards of education in connection with the control of school funds and in the creation and alteration of school districts, and other matters. Section 6 (f) thereof provides for appeals from orders of the county board of education to the circuit court by bill of exceptions in accordance with Section 1195, Code of 1942.

Section 9 of Chapter 19 provides for the opinion of the county superintendent of education to be given, upon request, in controversies and disputes arising in the public schools under the school law, and for successive appeals to the county and the state boards of education.

Thus the Legislature, in its enactments at the extraordinary session of 1953, wrought a great change in the public school system of the State. It determined that reorganizations and consolidations should be effected as soon as practicable, but at all events by July 1, 1957. In order to carry out the program, it therefore abolished all school districts in existence in the State. But then, in the next breath, in order to prevent chaos in the educational life of the State, it breathed new life into the districts and provided that they should ''continue to exist with all the powers, rights, privileges, and prerogatives thereof as now provided by law until such school district shall be reconstituted or the territory thereof consolidated with other territory as is hereinafter prescribed.'' All boards of trustees were likewise continued in office un-

til the reorganizations and consolidations were effected, "with all of the existing powers, duties, authority, rights and privileges thereof. * * * "

The obvious purpose of the acts was to keep the existing schools in operation, just as they were at the time of the passage of these legislative acts, until the mandatory reorganizations and consolidations have been effectuated. For the intervening time, between the approval of the acts and the consummation of the reorganizations and consolidations, it was the evident purpose of the Legislature to preserve all rights under existing laws. Sections 6333, 6336 and 6352, supra, although expressly repealed, as above mentioned, are therefore in fact preserved in full force and effect during this intervening period, and were available to the appellees in the assertion of their rights and in obtaining the relief which they sought.

The effect of the injunction was to require the payment of the appellants of transportation, tuition and legal charges for the attendance of the children in the Big Creek School until such time as they might be thereafter lawfully transferred to some other school, which, of course, means not longer than July 1, 1957.

It follows therefore that the decree of the learned chancellor ought to be, and is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.

### ON SUGGESTION OF ERROR OF AMICUS CURIAE

Lee, J.

This cause was affirmed on June 13, 1955. It was held that the appellees had the right, under Paragraphs 1 and 2 of Section 6333, Section 6336, and Section 6352, Code of 1942, to bring this suit; and that, for the reasons stated, their right thereto was not extinguished by Chapters 12 and 15, Laws of 1953, Ex. Sess., which re-

pealed those sections, or by Chapters 16 and 19 of that session because of their failure to pursue the right of appeal, both direct and administrative, provided for therein. Neither the appellants nor the appellees filed a suggestion of error. Consequently the parties to the litigation at least acquiesce therein.

The State Educational Finance Commission filed a motion to intervene as amicus curiae, not for the purpose of changing or affecting the result of the decision, but in order to ask for the withdrawal or modification of certain language in the opinion, and also to file a suggestion of error for a like purpose. The Commission appears to be apprehensive of some ill effect on the operation of the public school system, as provided for in the series of laws which were enacted during the extraordinary session of the Legislature in 1953, and by subsequent laws amendatory thereof.

The opinion made references to the Herculean task which the Legislature undertook at the above mentioned extraordinary session and to the enactment of sixteen different chapters, covering perhaps every imaginable feature in the operation of the public schools. Those acts were approved on December 28, 1953. However, it was erroneously stated that they became effective from and after their passage. This statement was an inadvertence because some of the acts in question provided for a different effective date. But only parts of Chapters 12, 15, 16 and 19 came under consideration; and obviously the conceded inadvertence could have no ill effect in the other acts. Chapters 12 and 15 expressly provided that they were to take effect from and after their passage. These are the acts which repealed Sections 6333, 6336 and 6352, Code of 1942, under which the appellees sought to maintain their suit. Chapters 16 and 19, which were referred to only insofar as appeals and administrative remedies are concerned, took effect on July 1, 1954.

The latest date for the consolidation or reconstitution of schools — July 1, 1957 — mentioned in Section 1, Chapter 12, supra, expressly referred to the work of the county board of education. There is nothing in the opinion to justify a conclusion that the Court held or implied that the Legislature could not subsequently amend its acts.

As to the parts of the chapters which came under review, it is obvious that the Court sought to reconcile rather than to pass upon their validity. The only reference to the other chapters concerned their effective date, and, as stated, was erroneous. Thus the movant's professed apprehension that confusion and uncertainty may arise in the administration of those acts is groundless.

In spite of the meticulous care with which the Court strives to state the facts, identify statutes, and quote applicable authorities, it sometimes happens that mistakes or inadvertences occur. In such instances, the Court itself makes corrections, if and when it discovers them, and is sincerely appreciative when such errors are called to its attention by the parties or anyone else.

This is not an advisory opinion. It is a correction of an obvious error, as pointed out above, and a mere statement that the Court decided only the points mentioned in the first paragraph hereof and did not decide certain questions about which the movant seems to be alarmed. The original opinion will of course be read and considered in the light of the above observations.

The motion is partially sustained to the extent of the above corrections, but the suggestion of error is overruled.

Opinion corrected and suggestion of error of amicus curiae overruled.

*Roberds, P. J., Arrington, Ethridge* and *Gillespie, JJ.,* concur.