350 So.2d 1329 (1977)
Louis FONDREN et al.
v.
The STATE TAX COMMISSION of the State of Mississippi et al.
No. 49459.
Supreme Court of Mississippi.
August 31, 1977.
Rehearing Denied November 16, 1977.
*1330 Earl L. Koskela, Louis Fondren, Jr., Pascagoula, for appellants.
A.F. Summer, Atty. Gen., by P.L. Douglas, Asst. Atty. Gen., Jackson, for appellees.
Before PATTERSON, C.J., and SUGG and WALKER, JJ.
WALKER, Justice, for the Court:
Louis Fondren, together with his children Suzanne and Michael Louis, brought this action originally in the Chancery Court of Jackson County, Mississippi, seeking to enjoin the State Tax Commission from approving each county's recapitulation of its assessment rolls, on which the property tax is based, until such time as the Tax Commission should comply with its duty to equalize assessments among counties as provided by Mississippi Code Annotated sections 27-35-113 through -117 (1972) and section 112 of the Constitution of 1890. The pertinent part of section 112 of the Constitution provides:
Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value. Property shall be assessed for taxes under general laws, and by uniform rules, and in proportion to its value.
The Legislature has imposed the duty of enforcing this section on the State Tax Commission. Mississippi Code Annotated section 27-35-113 (1972) reads in part:
It shall be the duty of the tax commission to carefully examine the recapitulations of the assessment rolls of the counties, *1331 when received, to compare the assessed valuation of the various classes of property in the respective counties, to investigate and determine if the assessed valuation of any classes of property in any one or more counties of the state is not equal and uniform with the assessed values fixed upon the same classes of property in other counties of the state, and to ascertain if any class of property in any one or more counties is assessed for less than the true value of the property.
The same section goes on to give the Commission the authority to equalize assessments among the counties. The next section, Mississippi Code Annotated section 27-35-115 (1972), instructs the Commission to report its determinations to the various boards of supervisors. The following section, Mississippi Code Annotated section 27-35-117 (1972), provides a method for the boards of supervisors and for affected individuals to contest the determination of the State Tax Commission. However, the final authority for determining assessments rests with the Commission. "The decision of the state tax commission when made shall be final and it shall be the duty of the board of supervisors to immediately revise and correct the assessment of the classes of property affected by the order, in accordance with the instructions of the commission." Id. The section concludes, "The revised and corrected property valuations thus made shall be the fixed and legal valuations of the property for the payment of taxes, and it shall be the duty of each and every taxpayer to pay his taxes thereon accordingly." Id. The state ad valorem tax of four mills on the dollar is based upon these county assessment rolls. Mississippi Code Annotated section 27-39-1 (Supp. 1976) reads in full:
A state ad valorem tax of four (4) mills on the dollar for the year 1958 and for each year thereafter is hereby levied on all taxable property in the State of Mississippi.
Fondren's complaint alleges that the State Tax Commission has consistently failed to carry out its duty of equalization as required by the Constitution and the Code. Fondren claims, "There is wide discrepancy rather than uniformity among tax assessors in the various local districts in determining the fair market value of real property situated within the local taxing district." Fondren goes on to say:
Further, after the local tax assessor determines, estimates, or guesses the actual cash value of each piece of property within his local district, the second step is applied. This step is the percentage ratio that is applied to the actual cash value. Here again, variation, not uniformity and equality, is the prevailing practice so that some tax assessors use a percentage ratio of 10% of actual value, some use a percentage ratio of 30% of actual value and many local taxing districts use somewhere in between. Thus, the variation brought about by the lack of uniformity or rules and regulations in obtaining actual cash value of property is further multiplies (sic) upon by the lack of any uniformity in the application of percentage ratio so that the property of the Complainants is in numerous instances taxed at one thousand percent (1,000%) or more than the property of the same value located in some of the other taxing districts in Mississippi.
These alleged variations in assessment procedures would cause the statewide levy of four mills on the dollar to fall more heavily in some counties than in others. Fondren contends that this is a violation of section 112 of the Constitution. He further contends that the State Tax Commission, over a period of many years, has neglected its statutory duty to enforce section 112 of the Constitution, and he seeks an injunction barring the Commission "from approving the recapitulations of the tax rolls until such times as they are in compliance with the statutory law of the State of Mississippi requiring them to effectively enforce the fair, uniform and equal assessments of property as required by section 112 of the Mississippi Constitution of 1890."
After a change of venue to the Chancery Court of the First Judicial District of Hinds County, the attorney general filed a general *1332 demurrer to Fondren's bill. The court sustained the demurrer on two grounds. First, the court categorized Fondren's action as a "taxpayer's suit" and held that he was required to show that he had applied to the proper parties without redress and had invited other citizens to join the suit. The court also concluded that Mississippi Code Annotated section 27-35-163 (1972) provided Fondren an adequate remedy at law, thereby depriving him of his equitable remedy. We have concluded that the chancery court is in error on both of these propositions. We have further concluded that the allegations of Fondren's bill of complaint, if proved, entitle him to relief. We therefore reverse.

I.
We must first consider the question of Fondren's standing to bring this suit. The cases dealing with taxpayer's suits, on which the chancery court and the Commission rely, have nothing to do with the case before us. The Commission is under the mistaken impression that any action in which a private citizen sues his government concerning a matter of general public interest is a "taxpayer's suit." The cases which this Court has called taxpayer's suits constitute only one of the possible forms of relief available to a private citizen. There are several others as well.
First and foremost are the historic writs of mandamus and prohibition. These writs are of only limited value for a private citizen who seeks to litigate a matter of general public interest, because Mississippi Code Annotated section 11-41-1 (1972) provides that the writs may ordinarily be sought only by the attorney general or a district attorney. However, if a private citizen can show that he has "an interest separate from or in excess of that of the general public" relief may be available to him on his own application. Compare Wilson v. City of Laurel, 249 So.2d 801 (Miss. 1971), with Thompson v. Mayfield, 204 So.2d 878 (Miss. 1967).
In addition to the general statute, the Legislature has, from time to time, provided for other uses for the writ of mandamus. In several places, our statutes provide that the holders of public bonds may obtain relief by mandamus. See, e.g., Miss. Code Ann. §§ 31-11-73 and 37-29-117 (1972). Other statutes have provided that certain duties of certain officials may be enforced not only by bond holders, but by "any other interested person or party." See, e.g., Miss. Code Ann. § 51-35-201 (1972). The plaintiffs in Grenada County School Board v. Provine, 224 Miss. 574, 80 So.2d 798, 81 So.2d 694 (1955), relied on just such a statute. Mississippi Code 1942 Annotated section 6352 (1953) provided that school officials were subject to mandamus at the instance of any "person aggrieved." In Grenada County School Board, this Court held that ordinary citizens, taxpayers, and parents were entitled to pursue this remedy provided by the Legislature, and granted them the relief they sought. It is important to note that, where the Legislature had provided this specific avenue of relief, this Court made no mention of requiring the plaintiffs to show that they had applied to the proper parties without redress. The Court did, however, note with approval that the complainants had invited other interested parties to join the suit. Id. at 581, 80 So.2d at 800. The Court did not say that their complaint would have been vulnerable to a demurrer had they made no such effort.
Such a requirement has only been imposed in the case of taxpayer's suits. The cases relied upon by the Commission are actions in equity attempting to restrain particular governmental acts where the Legislature has provided no other legal remedy. In McKee v. Hogan, 145 Miss. 747, 110 So. 775 (1926), the taxpayer sought to enjoin the trustees of the Starkville Separate School District from purchasing a particular piece of property, relying on no particular statutory authority for his suit. This Court held that "before a private citizen can resort to injunction to litigate public questions, he should show that he has applied to the proper parties without redress, and also that he has invited other *1333 citizens to join with him in the litigation." Id. at 766, 110 So. at 779-80. Likewise, in Gaudet v. Mayor & Bd. of Aldermen, 209 Miss. 113, 46 So.2d 79 (1950), the taxpayer sought to enjoin the enforcement of a contract entered into by the City of Natchez. As in McKee, he cited no statutory authority for his suit, and this Court upheld the dismissal of his bill, relying on McKee. In Trahan v. State Highway Comm'n, 169 Miss. 732, 151 So. 178 (1933), also relied on by the Commission, the taxpayers sought to enjoin the relocation of a highway. Among other things, they contended that no constitutional appropriation of funds had been made for the project. This Court denied them standing on that issue, repeating the requirements of McKee. Id. at 751-52, 151 So. at 182-83.
However, the requirements of McKee have never been applied in a case where the Legislature has granted specific authority for a citizen to come to the court. Fondren brings his suit under the specific authority of Mississippi Code Annotated section 11-13-11 (1972), which reads:
The chancery court shall have jurisdiction of suits by one or more taxpayers in any county, city, town, or village, to restrain the collection of any taxes levied or attempted to be collected without authority of law.
This is precisely what Fondren seeks to do. In enjoining the approval of the assessment rolls, the chancery court would be restraining the collection of the property tax, since it is only after the valuations have been revised and corrected that the duty to pay taxes arises. Miss. Code Ann. § 27-35-117 (1972).
This statute was construed by this Court in Stone v. Kerr, 194 Miss. 646, 10 So.2d 845 (1942). In that case, we denied the taxpayer access to the remedy of injunction because we concluded that he had an adequate remedy at law. Id. at 660, 10 So.2d at 848. We made no suggestion that any other factor should be taken into consideration in deciding whether to grant relief under this section. The Court did not cite McKee. The Court did not say that the taxpayer must have sought redress before the proper authorities or must have invited other taxpayers to join him. We decline to impose such requirements now. Where the Legislature has authorized a suit, we are not disposed to place further procedural barriers between the complainant and the vindication of his rights. We hold that Fondren, as a taxpayer, had standing to bring this suit.

II.
Following Stone, we must proceed to consider whether Fondren has an adequate remedy at law. The chancery court concluded that his proper remedy was found in Mississippi Code Annotated section 27-35-163 (1972). We conclude that this remedy is entirely inadequate.
The section cited by the chancery court provides that any person "aggrieved by an order of the state tax commission assessing property for the purpose of ad valorem taxation may ... appeal with supersedeas as to the amount of taxes in controversy" to the appropriate circuit court. Miss. Code Ann. § 27-35-163 (1972). It is readily apparent that the purpose of such a suit is to obtain a judicial determination that a particular piece of property has been improperly assessed and to obtain a reduction in the tax. Likewise, Mississippi Code Annotated sections 27-35-93 and -119 (1972), relied upon by the Commission in its brief, provide methods by which to determine the proper assessment of a particular piece of property. It is not Fondren's contention that either the State Tax Commission or the Board of Supervisors of Jackson County has erroneously computed the value of his property. He is not seeking a new calculation of his tax. Rather, he contends that the State may not collect any taxes at all until the Tax Commission has performed its duty of equalizing assessments throughout the State. Only after that is done can Fondren determine whether he is entitled to a reduction in taxes. Only then will "the amount of taxes in controversy" become apparent. It is clear beyond doubt that the statutory remedies suggested by the Commission *1334 were never intended as vehicles for compelling the Commission to comply with section 112 of the Constitution.
An examination of Stone, supra, gives support to this conclusion. In that case, the taxpayer contended that his business fell under a provision of the law providing for a privilege tax of one percent of the gross income of his business, while the Commission had concluded that his business was governed by another section requiring two percent. In concluding that the taxpayer had an adequate remedy at law, the Court noted that the taxpayer was only seeking "a correction of the amount of the tax so assessed." Id. at 659, 10 So.2d at 848. Unlike the case before us, "the amount of taxes in controversy" was clear beyond dispute, and the Court held that the collection of the tax could not be enjoined for "mere irregularity or errors of computation." Id. at 659, 10 So.2d at 848. Quoting from the early case of Coulson v. Harris, 43 Miss. 728, 746 (1871), the Court noted that a writ of injunction would be appropriate "to prevent a continuing trespass or injury, or other wrong." Stone, supra, 194 Miss. at 657, 10 So.2d at 847.
The gravamen of Fondren's complaint is not that the State has made a mere error in computing his taxes. He alleges "a continuing trespass or injury," in that the State Tax Commission has failed for many years to carry out its duty of equalizing assessments, which is a prerequisite to the collection of taxes at all. Stone fully supports the conclusion that such a question is not to be litigated under the statutory remedies suggested by the Commission, but is the proper subject of a suit to enjoin the collection of taxes. We conclude that Fondren is without adequate remedy at law, and that he is entitled to seek an injunction in the chancery court.

III.
Having determined that Fondren has standing to bring this suit and that he has no adequate remedy at law, we must consider whether his allegations of fact, if proved, warrant the conclusion that the Commission's actions result in the collection of taxes "without authority of law." We have no hesitation in concluding that Fondren's bill of complaint states a cause of action on which relief may be granted.
The mandate of section 112 of the Constitution is plain. The Commission's duty to enforce the mandate of section 112 is equally plain. Miss. Code Ann. §§ 27-35-113 through -117 (1972). The portions of Fondren's complaint quoted at the outset of this opinion clearly allege that the Commission has not performed its duty. He contends that two pieces of property, having the same market value but located in different counties, may be valued quite differently by the local assessors. Having begun with an inequality, that inequality is compounded when one county chooses to assess its property at a different percentage of its determined value than does another county. The State tax of four mills on the dollar is then collected on the basis of these disproportionate assessments. Thus, owners of parcels of land of identical value in different counties may face radically different tax liabilities. These allegations, if proved, constitute a blatant violation of section 112 of our Constitution. In essence, Fondren alleges that taxation is not uniform and equal throughout the State. He contends that property is not taxed in proportion to its value. He maintains that property is not assessed for taxes under general laws, and by uniform rules, and in proportion to its value. Proof of his allegations would establish that the Commission had failed in its statutory duty, under Mississippi Code Annotated section 27-35-113 (1972), to equalize assessments as required by section 112. If Fondren can prove the constitutional and statutory violations he alleges, he will be entitled to relief.
The opinions of this Court have always reflected our dedication to the principles of judicial restraint. Our cases on standing, discussed earlier in this opinion, reflect our conviction that the political officers of this State ought to be free to serve the public without fear of a multiplicity of unnecessary lawsuits. In concluding that Fondren *1335 must be given the opportunity to prove his allegations, we have not departed from either of these principles. Where the chief political officers of this State, our Legislature, have granted private citizens a right of action, we deem it unnecessary to provide further protection for public officers by judicially created requirements of standing. Nor have we opened the door for judicial legislation. Fondren has not asked us to impose our own subjective notions of equal protection or due process. Rather, he asks us to enforce the specific and plain words of section 112.
In declaring that relief may be appropriate, we do not overstep the bounds of the judicial function. This Court and the State Tax Commission both draw our authority from the same source. The only source of authority in this State is the will of the people, as expressed in our Constitution. Mississippi Constitution Article II, section 5 (1890). Where the State Tax Commission or any other agency of this State has violated its constitutional duty, to the detriment of any citizen of this State, the courts of this State have the duty to grant that citizen relief. That is all that is involved in this case.
We conclude that the chancery court erred in sustaining the Commission's demurrer. The cause must be remanded for a hearing on the merits.

IV.
It is not inappropriate in a case as complex as the one before us to make certain remarks for the guidance of the chancery court on remand. We may start by noting what we have held and what we have not held in this opinion. We have held that Louis Fondren has standing to bring this suit, that he has no adequate remedy at law, and that certain allegations of fact, sufficiently discussed earlier in this opinion, would entitle him to relief if he can prove them to the satisfaction of the court. We have merely concluded that one complainant has alleged sufficient facts to entitle him to relief. This is all that is necessary to withstand the general demurrer offered by the Commission. Griffith, Mississippi Chancery Practice, section 293 (2d ed. 1950).
It has been unnecessary for us to consider, and we have not considered, other facets of Fondren's complaint. For instance, we have not considered whether his children, who are not alleged to be property owners, have standing to bring this suit. We have not considered his references to the separate assessments which municipalities are entitled to make under Mississippi Code Annotated section 21-33-9(b) (1972). These separate assessments have nothing to do with the State tax of four mills per dollar, levied on the basis of the county assessments. We have no occasion to consider here whether municipal assessments might in some way violate section 112 of the Constitution.
Finally, we must consider the relief to which Fondren may be entitled if he can prove his allegations. In his bill of complaint, he prays for an injunction barring the Commission from approving the assessment rolls, but concedes that the Commission should be allowed reasonable time to comply with the law. He suggests that the Commission should proceed immediately to adopt uniform rules of assessment throughout the State, and he concludes his bill with a prayer for general relief. Certainly, the chancery court would have the authority to enjoin the approval of the assessment rolls, which would result in the State's inability to collect its taxes. However, the chancery court may determine that less drastic measures will be sufficient to secure compliance with the Constitution. In the current posture of the case, we deem it unnecessary to comment further on possible remedies.
The cause is therefore remanded to the Chancery Court of the First Judicial District of Hinds County for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
PATTERSON, C.J., and SUGG, LEE and BOWLING, JJ., concur.
SMITH, and INZER, P. JJ., and ROBERTSON and BROOM, JJ., dissent.
*1336 SMITH, Presiding Justice, dissenting:
I concur in the dissenting opinion written by Justice Robertson.
The present suit appears to be directed at producing a Shangri La where all assessments (valuations) of property will be made equal throughout the 82 counties. More than 100 years of practical experience and common sense should be consulted to determine if any such theory actually can be brought about short of revolution.
The drafting of a court decree providing for the mandatory injunction demanded in this suit for the purpose of realizing such an abstraction would, I humbly submit, present insurmountable difficulties. A mandatory injunction should never be issued in any case except with great circumspection. In this case, one must inquire what official or officials could be so coerced as to force an equality of assessments in 82 counties? The valuation of property is only a matter of opinion. Under the law, and ancient practice in Mississippi, property has been valued for taxation locally by an elected tax assessor who knows local values and whose performance is reviewed every four years by his constituents. It would be an idle gesture for the Tax Commission to adopt an order directing these officials to value all property the same throughout the state. The Commission would experience the same difficulty now confronting the Court; it has no practical means of enforcing such an order. In the last analysis, counties and taxing districts require certain income to operate and to discharge full faith and credit obligations. To "equalize" assessments throughout the state would inescapably mean, according to the allegations of the bill, that some counties would be "raised" and others "lowered" and funds not needed in the first would be produced (granting that levies may be altered within statutory limits) but in the second group insufficient revenues to operate and to pay obligations would result. How would the Court be able to enforce a mandatory injunction directing the Tax Commission to equalize assessments? By contempt proceedings against the Tax Commission? Of course, the Commission might be forced to adopt an order directing equality of assessments, but what then? Would an army of assessors representing the Commission, (appointed by the Governor, Commission, or by whom?) then fan out through the 82 counties second guessing the elected tax assessor? And where would the not inconsiderable funds necessary to pay for all of this come from in the absence of a Legislative appropriation? Would mandamus lie against the Tax Commission? The present suit is not brought by an official authorized to pursue that course. Moreover, if it had been, the Commission might have been directed by the Court to act by placing such an order on its minutes, but this would in no way reach the ultimate objective of the present suit which is to equalize assessments of property in all of the 82 counties. A tax assessor might be forced by a court in a proper case to give an opinion upon the value of property under his jurisdiction, but the court may not control what the opinion shall be.
The appraisal of property by expert appraisers is far from an exact science. A review of the hundreds of eminent domain cases with which this Court has had to deal over the years makes it all too clear that the so-called "expert" appraisers are never in agreement and, more often than not, are light years apart in their opinions. The question really is, whose opinion should control? Locally elected tax assessors have done the job for more than a century. I consider the innumerable changes in the statutory law of Mississippi which would be necessary in order to bring about a statewide "equal" assessment throughout the 82 counties a matter for the Legislature, if such an unworkable (and unpalatable) thing should be attempted at all. Certainly, the Court is without the machinery to do the job and it is ancient law that no court will enter a decree which it is incapable of enforcing.
INZER, P.J., and ROBERTSON, J., join in this dissent.
*1337 ROBERTSON, Justice, dissenting:
I respectfully dissent. I think that the Chancery Court of the First Judicial District of Hinds County properly sustained a general demurrer to the "Bill of Complaint for Permanent Injunctive Relief and for Bill of Discovery" filed by Louis Fondren, individually and as the father, natural guardian and next friend of his two minor children, against the State Tax Commission and the Chairman and two Commissioners of the State Tax Commission individually.
It is my opinion that there is no equity on the face of the bill, and that the complainants have a plain, adequate and complete remedy at law.
The majority opinion states that the amended bill of complaint for permanent injunctive relief is based upon the State Tax Commission's failure to "comply with its duty to equalize assessments among counties as provided by Mississippi Code Annotated sections 27-35-113 through 117 (1972), and section 112 of the Constitution of 1890." These sections provide an elaborate procedure set forth with great specificity by the Mississippi Legislature whereby the rights of each individual taxpayer and the State Tax Commission are fully protected, and where each individual taxpayer aggrieved may first present his objections to the Board of Supervisors of the County wherein his property lies (Section 27-35-117), and if the taxpayer is dissatisfied with the decision of the Board of Supervisors then he may appeal to the Circuit Court according to the provisions of Section 27-35-119, which is styled "Taxpayer may appeal" and provides:
"Any taxpayer who feels aggrieved at the action of the board of supervisors in equalizing his assessments shall have the right to appeal to the circuit court in the manner provided by law, within ten days after the adjournment of the meeting of the board of supervisors, at which the approval of the roll by the state tax commission is entered."
The complainants seek to short-cut and circumvent this law, and this procedure, which the Legislature in its wisdom has very carefully set forth in great detail, and to bring this action under the provisions of a very short statute which reads as follows:
"The chancery court shall have jurisdiction of suits by one or more taxpayers in any county, city, town, or village, to restrain the collection of any taxes levied or attempted to be collected without authority of law." [Miss. Code Ann. sec. 11-13-11 (1972).]
I call attention to the fact that the only defendants in the case at bar are the State Tax Commission and the three individual members of that Commission. It is not brought against the tax collector of Jackson County or the tax collector of Leflore County, in which counties the complainants allege that they own real property. Section 11-13-11 provides for suit "to restrain the collection of any taxes levied or attempted to be collected without authority of law." (Emphasis added).
In Stone, Chairman of State Tax Commission, v. Kerr, 194 Miss. 646, 10 So.2d 845 (1943), reversing the judgment of the Chancery Court of Neshoba County and dismissing the bill of complaint for injunction against the Chairman of the State Tax Commission wherein the complainant alleged that the Tax Commission was illegally proceeding to enforce collection of $387 of privilege taxes, this Court said that the Chancery Court should have sustained a demurrer to the bill of complaint because the complainant had a plain, adequate and complete remedy at law but failed to follow that route. In Stone, this Court said:
"This procedure for relief was not availed of by the petitioner who took no course other than to enjoin the Chairman of the Tax Commission and the sheriff of the county who was proceeding to collect the additional tax by actual levy, under the warrant of the Tax Commissioner. The Commission was acting with full authority in the matter. It was peculiarly within its jurisdiction and the procedure followed was that prescribed by the statute." 194 Miss. at 658-59, 10 So.2d at 847.
*1338 In Stone, this Court held that the key words in section 420, Miss.Code 1930 [Miss. Code Ann. § 11-13-11 (1972)], are "without authority of law". This Court said:
"We have already held that Section 420 affords the only authority for equity jurisdiction in cases of this class. Purvis v. Robinson, supra. The language of the statute `without authority of law' imports more than mere irregularity or errors of computation. The correction of improper charges involves matters remediable by appeal or original suit and presupposes jurisdiction. To hold otherwise would make jurisdiction dependent upon certitude of decision upon the merits. It is no anomaly that errors of fact or judgment may be committed while acting under authority of law." 194 Miss. at 659-60, 10 So.2d at 848.
As in Stone, the Commission in the case at bar was acting with full authority in the matter [Miss. Code Ann. §§ 27-35-113 through 117 (1972)]. True it is that the complainants did not like the decision of the State Tax Commission approving the tax rolls of Jackson County and Leflore County, but instead of appealing first to the Board of Supervisors of Jackson and Leflore counties and then to the circuit court under the provisions of section 27-35-119, as they had a right to do, they have attempted to short-cut and to go directly to the chancery court under the provisions of section 11-13-11, where they pray for a mandatory injunction to enjoin the collection of state ad valorem taxes in all 82 counties of the state.
Before holding that the complainants had an adequate remedy at law, the Court, in Stone, quoted with approval from Coulson v. Harris, 43 Miss. 728 (1871);
"`Courts of equity ought not, except upon the clearest grounds, to interfere with the speedy collection of public taxes. That a writ of injunction can only be issued, where the complainant, in his bill, makes a case of equity jurisdiction; and in all cases, involving simply the question of taxation; the issue is strictly one of common law, and courts of equity can take no cognizance thereof; that a party aggrieved by an illegal taxation, has ample remedy at law, and need not, in any case, have recourse to a court of equity, unless the facts bring the case within some appropriate recognized head of equity jurisdiction, such as to prevent irreparable injury, to protect a party in the enjoyment of an exclusive franchise or privilege, or to prevent a continuing trespass or injury, or other wrong, for which there would be no adequate remedy at law.' This view was reaffirmed in McDonald v. Murphree, 45 Miss. 705," 194 Miss. at 657, 10 So.2d at 847.
As I view section 11-13-11, it authorizes suit against the tax collector of a county or municipality and not against an agency of the state which would affect the collection of taxes in all 82 counties and all municipalities of the state.
There is yet another ground on which I think the general demurrer was rightly sustained. The bill of complaint for permanent injunctive relief and for bill of discovery sets forth conclusions of the pleaders but not facts to support an equitable cause of action. The amended bill of complaint avers:
"Generally, there is a three-step procedure that is common to all local taxing districts in the State of Mississippi. This three-step procedure alone does not constitute a violation of said Section 112 of the Mississippi Constitution, said Section 112 does not say that property should be taxed according to its `value' but clearly states that property should be taxed `in proportion to its value.' This procedure begins with first the local assessor in many taxing districts throughout the State arbitrarily and without any uniform guidelines deciding some figure as the fair market value of the real property then, the local assessor both arbitrarily and without guidelines adopts a certain percentage ratio of that fair market value used in assessing the particular property for the purpose of that local taxing district. Then, in the third and final step, the millage rate adopted for the local governing authority or authorities *1339 and the statewide four (4) mills is charged upon this valuation.
"14. There is a wide discrepancy rather than uniformity among tax assessors in the various local districts in determining the fair market value of real property situated within the local taxing district. Some taxing districts have obtained the services of professional organizations in arriving at the fair market value of property within the district. Among the taxing districts now in the process of completing such a professional study is the City of Moss Point, Mississippi with reference to the real property lying within the Moss Point Municipal Separate School Districts. However, other local taxing districts throughout Mississippi are using the same values for fair market values that they have used for many years in spite of the fact that the fair market value of real property in their district has undergone tremendous increases in value since it was last actually evaluated.
"15. Further, after the local tax assessor determines, estimates, or guesses the actual cash value of each piece of property within his local district, the second step is applied. This step is the percentage ratio that is applied to the actual cash value. Here again, variation, not uniformity and equality, is the prevailing practice so that some tax assessors use a percentage ratio of 10% of actual value, some use a percentage ratio of 30% of actual value and many local taxing districts use somewhere in between. Thus, the variation brought about by the lack of uniformity or rules and regulations in obtaining actual cash value of property is further multiplies (sic) upon by the lack of uniformity in the application of percentage ratio so that the property of the Complainants is in numerous instances taxed at one thousand percent (1,000%) or more than the property of the same value located in some of the other taxing districts in Mississippi."
The complainants appear to be indicting every tax assessor in the state, and this too in very general and vague terms.
A general demurrer admits only facts well pleaded, not conclusions of the pleader. Griffith, Mississippi Chancery Practice (2d Edition 1950), section 288, pages 271-72.
There is another question posed which the majority opinion does not answer. In the case at bar, is the taxing district, the whole state of Mississippi, or is it the taxing districts of Jackson and Leflore Counties that are involved in this case?
In Xerox Corporation v. City of Jackson, 328 So.2d 330 (Miss. 1976), this Court said, with reference to the language of Section 112, Mississippi Constitution of 1890:
"We have construed this language to mean that assessments must be equal and uniform in the taxing district. McArdle's Estate v. City of Jackson, 215 Miss. 571, 61 So.2d 400, 63 So.2d 101 (1952); Lavecchia v. Mayor and Aldermen of City of Vicksburg, 197 Miss. 860, 20 So.2d 831 (1945); Redmond v. City of Jackson, 143 Miss. 114, 108 So. 444 (1926). In this case the taxing district is the City of Jackson." 328 So.2d at 334.
In their prayer, the complainants pray for an allencompassing mandatory permanent injunction,
"[B]arring them as a State Tax Commission and individually from approving the recapitulations of the tax rolls until such times as they are in compliance with the statutory law of the State of Mississippi requiring them to effectively enforce the fair, uniform and equal assessments of property as required by Section 112 of the Mississippi Constitution of 1890 and that the State Tax Commission should be allowed reasonable time for such compliance but shall forthwith adopt such measures as uniform and equal assessment guidelines, the use of the percentage ration (sic) that is the average of the ratios now being used over the State of Mississippi in order that the least expensive and most direct procedures under existing Mississippi law aimed toward compliance with said Section 112 of the Constitution of Mississippi and the law relative to its enforcement may begin forthwith."
*1340 Griffith, in his Mississippi Chancery Practice, (2d Edition 1950), has this to say about the essentials of a decree:
"There must in all respects be a clear and unambiguous certainty in all the provisions of a decree so that every party thereto may know exactly what he is to do in obedience to it and that all may safely perform its terms as written; and particularly must this be true when the decree is framed to meet the exigencies of a complicated situation wherein misunderstanding might easily arise. It should be complete within itself,  containing no extraneous references, and leaving open no matter or description or designation out of which contention may arise as to the meaning. Nor should a final decree leave open any judicial question to be determined by others, whether those others be the parties or be the officers charged with the execution of the decree, and even as to matters solely affecting the execution, if their nature be such as is likely to eventuate in dispute, reservation for further directions should be made if impossible safely to do otherwise. Indeed, if the case be such that the decree cannot be made to comply with the foregoing essentials and at the same time with the requirement that final decrees shall embrace all the material issues in the case, it may sometimes become a question whether the court will make any decree at all. For instance, in a case of specific performance of a contract where the relief is largely within the sound discretion of the court, the relief may be declined altogether where the court is unable to frame a practical decree that by its terms will cover the subject matter definitely, for equity will not under the pretense of giving a remedy in the absence of a perfect one at law substitute an imperfect, cumbersome, and inexpedient equitable one." [Sec. 625, pages 676-77]. (Emphasis added).
It is apparent to me from a careful reading of the amended bill of complaint that a chancery court cannot possibly frame a decree meeting the essentials outlined by Judge Griffith. This is yet another reason why I think the chancery court was correct in sustaining the general demurrer.
INZER and SMITH, P. JJ., and BROOM, J., join in this dissent.