387 So.2d 712 (1980)
The STATE TAX COMMISSION of the State of Mississippi et al.
v.
Louis FONDREN et al. and J.C. Redd et al.
No. 52018.
Supreme Court of Mississippi.
August 20, 1980.
Rehearing Denied September 24, 1980.
*713 Bill Allain, Atty. Gen. by Stephen J. Kirchmayr, Sp. Asst. Atty. Gen., P.L. Douglas, Asst. Atty. Gen., and R. Lloyd Arnold, Sp. Asst. Atty. Gen., James H. Haddock, Jackson, for appellants.
Cupit & Maxey, John L. Maxey, II, Jackson, Freeland & Gafford, James L. Robertson, Oxford, for appellees.
En Banc.
*714 SUGG, Justice, for the Court:
This appeal involves two cases consolidated for trial in the Chancery Court of the First Judicial District of Hinds County.
Louis Fondren and others filed a bill of complaint to enjoin the State Tax Commission of the State of Mississippi from approving each county's recapitulation of its assessment rolls until such time as the Tax Commission complied with its duty to equalize assessments among the counties as provided in sections 27-35-113, 27-35-115 and 27-35-117 Mississippi Code Annotated (1972). In this suit, complainants sought to require the Tax Commission to follow the mandate of Section 112[1] of the Mississippi Constitution of 1890 which requires taxation to be uniform and equal throughout the state and requires property to be assessed for taxes under general laws, by uniform rules, and in proportion to its value. The Tax Commission demurred to the bill of complaint, the demurrer was sustained, and Fondren appealed.
In Fondren v. State Tax Commission, 350 So.2d 1329 (Miss. 1977), we reversed and remanded for a trial on the merits holding Fondren had standing as an ad valorem taxpayer to maintain his suit, and the appeal statutes did not afford Fondren an adequate remedy at law. Further reference to Fondren will be made at appropriate places in this opinion.
After our decision in Fondren, supra, J.C. Redd and others, who are owners of taxable property in twelve (12) counties in Mississippi, filed a bill of complaint against the Tax Commission, its Chairman and Commissioners, the Chief of the Ad Valorem Division and the Chief of the Equalization Division to enjoin the Tax Commission from approving the assessment rolls of any county until the Tax Commission equalized the assessment rolls between the counties. In this case, complainants also sought recovery of all costs and expenses incurred in the lawsuit including attorneys' fees.
Following a hearing, the chancery court ordered that, beginning with the 1983 tax rolls and continuing with respect to the tax rolls for each successive year thereafter, the Tax Commission, its Commissioners, Officers and Agents, including their successors in office, were enjoined from accepting or approving the tax rolls of any county, or the recapitulation reports drawn therefrom, unless all real and personal property subject to ad valorem taxation within the county was valued and assessed as nearly as possible at its true value. True value was defined in the decree as full or one hundred percent value unless the legislature by 1983 enacted laws specifying a lesser percentage of true value for the determination of assessed value. The decree also required the Tax Commission to file progress reports with the court. The decree awarded complainants $58,000 attorneys' fees, payable out of any funds available to the Tax Commission, and retained jurisdiction of each of the consolidated cases for entry of such further orders or decrees necessary to effectuate the provisions of the final decree to the end that the defendants would be required to perform their duties to equalize assessments as required by statute in accord with the uniform and equal concept contained in Section 112 of the Constitution.

DOES THE STATE TAX COMMISSION HAVE AUTHORITY TO EQUALIZE ASSESSMENTS BETWEEN THE COUNTIES OF THE STATE?
On appeal, the Tax Commission contends, among other things, that the court did not *715 have the authority to require it to equalize the assessment rolls between the different counties. This is the first question involved in this appeal.
In three cases, this Court has addressed the duty and authority of the Tax Commission to equalize assessments between counties under sections 27-35-113, et seq., Mississippi Code Annotated (1972). These statutes were first enacted in 1916 when the legislature created the State Tax Commission giving it broad powers necessary to equalize assessments between counties. The statutes were first considered in Foreman v. Wheatley, 113 Miss. 555, 74 So. 427 (1917). In that case the Tax Commission ordered corrections to be made in the personal assessment roll of Washington County to increase the assessed value of certain classes of personal property, and directed the Board of Supervisors of Washington County to call a meeting for the purpose of making the changes in the personal assessment roll in accordance with the order of the Tax Commission. The board of supervisors gave notice of a special meeting, and at the meeting, elected to enter a protest against the order of the Tax Commission. The protest was heard by the Tax Commission which overruled the objections of the supervisors and entered a final order directing the increase specified in the order. The board of supervisors declined to correct the assessment roll. Upon their refusal to comply with the order of the Tax Commission, the State On The Relation of J.M. Foreman, District Attorney, filed a mandamus to compel compliance with the order of the Tax Commission. The petition filed by the district attorney was met by a general demurrer which challenged the constitutionality of the statute creating the Tax Commission and its authority to compel boards of supervisors to make any changes in assessment rolls. The demurrer was sustained. On appeal, we reversed and remanded holding the statute was constitutional and that the Tax Commission was created as a department of government with the power over boards of supervisors to equalize assessments between counties. Foreman is dispositive of the first issue presented on this appeal. It clearly defines the duties of the county tax assessors, the boards of supervisors, and the Tax Commission as these duties pertain to the assessment of property for taxation. It also shows that the interest of each individual is protected against overvaluation of his property in the assessment and equalization process by adequate remedies afforded by statute. Because of the importance of this case, we quote extensively from it.
It is agreed that section 112 of our Constitution provides the general standard for the assessment of property for taxation, and for the collection of ad valorem taxes. It furnishes the ideal rule by which the rights of taxpayers are to be measured-the guiding star for the lawmaker and every officer charged with the duty of assessing and valuing property for taxation. But the goal towards which our state has been striving has never yet been fully attained. The key words of our Constitution are "uniform," "equal," "true value," and, to accomplish results, "general laws." While property in every county is to be assessed at true value, it is a matter of common knowledge and comment that in practice this has been accomplished in name, and not in fact. The Constitution provides for a county assessor, fixes his term of office, and contemplates that this officer shall list and value all taxable property in his county. Experience for a long time indicates that the assessor generally places upon his roll unchanged the various valuations fixed by the property owner himself. The power to equalize assessments has heretofore been conferred upon the boards of supervisors, but experience further demonstrates that there are as many different standards of values in the state as there are separate boards of supervisors. The uniform rate of state tax must be applied to the unequal and varying valuations over the many counties of our commonwealth. Valuations of the same class of property has varied in adjoining counties without any real or substantial reason for the difference. It follows that *716 heretofore one county has been contributing to the state more revenue than many other counties with the same amount of taxable property. The burden has been unequally distributed. This is the known mischief which chapter 98, Laws 1916, has undertaken to remedy. This law was intended to be a step forward toward the ideal system contemplated by our organic law. Its purpose is to accomplish the very uniformity and equality demanded by the Constitution. ... (113 Miss. at 587, 588, 74 So. at 429)
.....
The act itself provides no new standard of assessments. The object of the new law is to assess all property at its true value to the end that all taxable property shall bear its just proportion of the burdens. The general constitutional scheme is binding on assessors, boards of supervisors, and the courts. It is equally binding upon the state tax commission... . (113 Miss. at 589, 74 So. at 429, 430)
The second, third, fourth, fifth, and sixth grounds of the demurrer challenge the constitutionality of the statute upon the ground that a compliance by the board of supervisors with the order of the state tax commissioners would deprive the individual taxpayer affected by the order of his property without due process of law in this, that the act under review does not provide for notice to be given the taxpayer of the proposed increase, does not afford an opportunity to be heard, and that it does not afford redress against an excessive or unconstitutional valuation... . (113 Miss. at 590, 74 So. at 430)
.....
There is another construction, however, to be placed upon the language of the act, and according to this construction the rights of the individual taxpayer would be noticed and safe-guarded. Section 6 does provide that the meeting of the board of supervisors is to be held upon notice; this notice is a general notice by publication and for the benefit of the public generally. By this notice every taxpayer is advised of the meeting and has a right to attend; by the terms of this section the board of supervisors are not directed to increase every individual taxpayer and fix an arbitrary percentage, but distributes the burden of increase amongst the individual taxpayers within the class of property affected by the order. In raising this class of property they are directed by the state board to increase not the assessment of any particular individual, but the total assessed valuation of that class of property. In accomplishing this increase of total valuation, the board of supervisors are accorded the absolute right to distribute the burden of increase uniformly amongst the taxpayers of that class. The section of the act makes use of the word "uniformly;" we regard the use of this term here in the sense in which the Constitution itself used the word "uniform." To illustrate, then: If honest Richard Roe originally gave in his assessment at the top market price-at constitutional true value-and the state board has ordered an increase by which he is to be affected, honest Richard has a right to appear at this meeting of the board and object to the increase so far as he is concerned. In objecting, he has the right to tender evidence, if necessary, to establish his contentions. If the board should overrule his objections he then has the right, under section 81 of the Code, to appeal from the order of the board to the circuit court of his county. In the circuit court his appeal could be tried anew and a judgment according to right and justice entered. By this construction the interests of any and every individual taxpayer would be protected and an adequate remedy afforded... . As to the class of property upon which the increase is ordered there is no final adjudication until the local board has complied with the order of the state board. In complying with this order the local board is not denied the right to hear the complaints of individuals, and to refuse to increase the assessment of any particular individual whose property is *717 already assessed at actual value. (113 Miss. at 592, 593, 74 So. at 430, 431)
.....
The legislature in providing that the state board shall return the assessment roll to the local board for correction indicated a purpose to leave full jurisdiction with the board of supervisors to make the increase in a way not to injure any one... . (113 Miss. at 594, 74 So. at 431)
.....

The statute under review in no wise undertakes to equalize as between individuals, but exclusively between counties. At the same time it does not either expressly or by implication supersede the jurisdiction of the local board to equalize as between individuals, and nowhere does it take away the right of the individual to an appeal. The courts are open to the individual and his appeal to the court even if successful does not and will not disturb the final approval of the roll as to any and all persons who do not appeal... . By the present statute the state board is constituted a higher tribunal with authority to speak before the several rolls are approved. As already indicated, the legislature must have thought that many counties were systematically undervaluing certain classes of property. The Constitution does of course provide for an assessor, fixes his term of office, and contemplates that he shall discharge the duty of listing and valuing the taxable property in his county. When he has done so, the board of supervisors have heretofore discharged the duty of equalizing as between all taxpayers of the county. While the members of the board of supervisors are provided for by the Constitution, the Constitution itself nowhere expressly provides that the board shall equalize assessments. The power to equalize is statutory.... No particular section of the Constitution has been called to our attention which, in our judgment, denies to the legislature the power here asserted. The power of the legislature as the immediate representatives of the people is supreme when not in conflict with the organic law. In their wisdom the legislature has provided the law in a commendable desire more nearly to accomplish uniformity and equality. It does not interfere with the work of the assessor, but leaves this official free and untrammeled in the discharge of his duties so far as his judgment goes. The Constitution nowhere makes the judgment of the assessor a finality. To do so would render the revenue laws impotent. It is conceded that the valuations placed by the assessor have heretofore been either increased or decreased by the board of supervisors, and that under a statutory power. The present law simply goes a step further and constitutes a still higher tribunal with statutory power to review, alter, and change the valuations of boards of supervisors whenever necessary to accomplish equality and uniformity as between counties. (113 Miss. at 596, 597, 598, 74 So. at 432, 433)
.....

The state tax commission is created as a department of government with revisory power over boards of supervisors in the work of equalizing assessments between counties. In applying the leveling process as between counties it does not disturb the jurisdiction of the county boards to level or equalize between individuals. Each board has its own peculiar functions to perform. The object of each is to accomplish uniformity and equality, and to see that all property is assessed as nearly as possible at true value. (113 Miss. at 599, 74 So. at 433)
.....
The statute, in our judgment, authorizes the state board to increase or decrease the total valuation of any class of property in any county to the end that there may be an equalization as between counties. In doing this, the board has no authority to increase the assessment of any property above that placed by one or more of the highest assessed counties of the state. It could not arbitrarily exceed the highest valuation placed by any board *718 upon the class of property dealt with. In all cases the act itself expressly limits the state board to true value. If they exceed true value, the individual has a right to protect himself. We cannot assume that the state board will exercise arbitrary power or undertake to confiscate property. If in equalizing as between counties it results that the total valuation of any class of property is thereby increased, a legitimate result is accomplished. The board has the same power to decrease as it has to increase, and the necessary result of the exercise of this power is not unlawful, but legitimate. Whether the board will rightfully exercise this power is a question that cannot now concern us. (113 Miss. at 601, 74 So. at 433, 434)
The authority of the Tax Commission to equalize assessments between counties was considered for the second time in Taylor v. State, 121 Miss. 771, 83 So. 810 (1920). The Tax Commission ordered the Board of Supervisors of Quitman County to increase the assessed value of the real property in Quitman County. The board of supervisors declined to make the change and a writ of mandamus was issued commanding the board to make the change. Instead of obeying the writ, the board passed an order refusing to comply with the writ. The board was adjudged to be in contempt for failing to obey the writ of mandamus. On appeal, the judgment finding the defendants in contempt was affirmed. This Court stated:
By this appeal we are again called upon to construe certain portions of chapter 98 of the Laws of 1916 creating a state tax commission and defining its powers and duties. There is but one real question involved in this appeal, and that is whether or not by this act the state tax commission is given the absolute authority to order the board of supervisors to raise or lower the assessments on certain classes of property which in the judgment of the state tax commission are either over or underassessed when compared with the property of the same classes in other counties. In other words, as between the state tax commission and the board of supervisors, which one of them has the superior or final judgment to say whether or not property or classes of property in a county are properly assessed, overassessed, or underassessed. It is the duty of the board of state tax commissioners to equalize the taxes among the different counties of the state. The board of supervisors is the equalizer of the assessments of the individuals. The state tax commission is the equalizer of the assessments among the different counties. (121 Miss. at 796, 797, 83 So. at 813)
.....

In other words, by chapter 98 of the Acts of 1916 the state tax board is given the final decision, as between these two boards, as to the assessable valuation of the classes of property mentioned in its order. (121 Miss. 800, 801, 83 So. at 814)
The third case involving the power of the Tax Commission to equalize assessments between counties was Fondren v. State Tax Commission, 350 So.2d 1329 (Miss. 1977). We reaffirmed the duty and authority of the Tax Commission to equalize assessments between counties under section 27-35-113 Mississippi Code Annotated (1972) in the following language:
Having determined that Fondren has standing to bring this suit and that he has no adequate remedy at law, we must consider whether his allegations of fact, if proved, warrant the conclusion that the Commission's actions result in the collection of taxes "without authority of law." We have no hesitation in concluding that Fondren's bill of complaint states a cause of action on which relief may be granted.

The mandate of section 112 of the Constitution is plain. The Commission's duty to enforce the mandate of section 112 is equally plain. Miss. Code Ann. §§ 27-35-113 through -117 (1972). The portions of Fondren's complaint quoted at the outset of this opinion clearly allege that the Commission has not performed its duty. He contends that two pieces of property, having the same market value but located in different counties, may be valued *719 quite differently by the local assessors. Having begun with an inequality, that inequality is compounded when one county chooses to assess its property at a different percentage of its determined value than does another county. The State tax of four mills on the dollar is then collected on the basis of these disproportionate assessments. Thus, owners of parcels of land of identical value in different counties may face radically different tax liabilities. These allegations, if proved, constitute a blatant violation of section 112 of our Constitution. In essence, Fondren alleges that taxation in not uniform and equal throughout the State. He contends that property is not taxed in proportion to its value. He maintains that property is not assessed for taxes under general laws, and by uniform rules, and in proportion to its value. Proof of his allegations would establish that the Commission had failed in its statutory duty, under Mississippi Code Annotated section 27-35-113 (1972), to equalize assessments as required by section 112. If Fondren can prove the constitutional and statutory violations he alleges, he will be entitled to relief. (350 So.2d at 1334)
From the foregoing cases, there remains no doubt that the Tax Commission has the duty and the authority to equalize assessments between the various counties of the state. The trial court found that no serious objection was raised to the allegation that the assessments between the counties had not been equalized. In his opinion, the chancellor stated:
As a matter of fact, there is almost complete agreement of both the Commission witnesses and the complainants' witnesses as to the complete lack of uniformity or equality of assessments in this state. The evidence is staggering and shocking to the senses.
The chancellor also held that, assuming the various tax assessors in the eighty-two counties of the state determined the true value of property subject to assessment for taxation, the assessed value as equalized by the boards of supervisors ranged from ten percent to thirty percent of true value in the various counties. The Commission does not take issue with this finding of the chancellor in its brief, neither does it assign as error that the chancellor was mistaken in his finding of fact.
After these cases involved in this appeal were tried, the legislature adopted Senate Bill No. 2672 at the 1980 session of the Mississippi Legislature. Section 24 of S.B. 2672 repealed the statewide four mill ad valorem tax levy effective January 1, 1982.
The Tax Commission argues that repeal of the four mill statewide ad valorem tax levy destroyed the single unified state taxing district, and the rule announced in Thompson v. Anding, 370 So.2d 1335 (Miss. 1979) and Xerox v. City of Jackson, 328 So.2d 330 (Miss. 1976) should be applied. These cases held that the provisions of equal and uniform assessments as contemplated in Section 112 of the Constitution are to be applied only to one taxing district, and a comparison of assessments between two different taxing districts is not necessary in applying the uniform and equal concept set forth in Section 112.
This argument overlooks the fact that there are twenty-five multi-county taxing districts within the state. The state is divided into thirteen junior college districts and each county in the state is in a junior college district. These counties contribute to the support of the junior colleges by ad valorem taxes collected for that purpose. If there were no other multi-county districts, equalization between counties could be accomplished by equalizing the assessments in the counties comprising each junior college district.
However, there are twelve other multi-county districts in the state which support these districts by ad valorem taxes. The number of counties in the additional multi-county districts range from two to fifteen. The boundaries of these additional multi-county districts do not correspond to the boundaries of the thirteen junior college districts but overlap the junior college districts and in some districts overlap other multi-county districts.
*720 Pearl River Basin Development District contains thirteen counties and is one of the additional multi-county districts. The proof shows that the assessed value of property in this district ranges from eight percent to twenty percent of true value.[2] Simpson and Copiah Counties are in this district and in Simpson County property is assessed at eight percent of true value and in Copiah County, twenty percent of true value. The tax rate levied to support this district is the same in Copiah and Simpson Counties. Thus, the taxpayers in Copiah County are bearing more than their fair share of the burden of supporting the district because their property is assessed at twenty percent of true value as opposed to eight percent in Simpson County.
Equalization of assessments between the counties in this district by the Tax Commission would achieve the uniform concept of Section 112 as to this district. However, many of the counties in this district are in different junior college districts and multi-county districts, so equalization of assessments between the counties in this district would not accomplish equalization between the counties in junior college and multi-county districts which overlap the Pearl River Basin Development District.
The multi-county districts within the state overlap to the extent that it would be impossible to equalize assessments between counties on a district by district approach. The only practical solution to the problem is to equalize assessments between all of the counties in the state. When this is accomplished, it will not matter how many different multi-county districts any given county is in because equalization of assessments between counties will have been applied uniformly.
The Tax Commission argues that section 14 of S.B. 2672 is designed to eliminate the inequities that existed between counties in multi-county districts. In our opinion the Tax Commission has not correctly interpreted section 14 because it is simply a limitation on the amount of revenue that may be raised by taxation for the support of a multi-county district. It limits an increase in revenue for the district to not more than ten percent that was collected in the next preceding year. It does nothing toward equalization between the counties.
It is true that Thompson and Xerox hold equal and uniform assessments, as required by our Constitution, are to be applied only to one taxing district. However, each of the multi-county districts is a taxing district; therefore, to satisfy the uniformity requirements of our Constitution, assessments must be equalized between the counties in each district and this can be accomplished by statewide equalization as demonstrated above.
The duty to equalize assessments between counties has been delegated to the Tax Commission by the legislature. We affirm the decree requiring the Tax Commission to equalize assessments between all of the counties in the state. If the legislature had not provided for equalization of assessments between counties, we fear our entire scheme of ad valorem taxation would be in jeopardy because it would not meet the constitutional requirement of uniformity and equality.

MUST PROPERTY BE ASSESSED FOR TAXATION AT TRUE VALUE?
The final decree provided in part as follows:
(a) That, beginning with the 1983 tax rolls, and continuing with respect to the tax rolls for each successive year thereafter, the defendants, their commissioners, officers, and agents, and specifically their successors in office, should be and they hereby are, absolutely and unequivocally enjoined and prohibited from accepting or approving the tax rolls of any county, or the recapitulation reports drawn therefrom, unless all real and personal property subject to ad valorem taxation within the county shall have been valued and assessed as nearly as possible *721 at its true value, it being expressly provided that the term "true value" means full or 100% of true value, unless the legislature has by 1983 enacted laws specifying a lesser percentage of true value for the determination of assessed value; ...
Following the chancellor's decision, the Legislature enacted Senate Bill 2672 authorizing assessment of property for taxation in proportion to its true value. In order to compare the amendments in sections 4, 7, 8 and 10 with the previous statutory law, we set forth portions of the sections before and after the amendments.
27-35-15 before amendment:
The tax assessors shall annually assess all personal property subject to taxation in their respective counties... .
1980 amendment:
The tax assessors shall annually appraise all personal property subject to taxation in their respective counties at true value and assess it in proportion thereto. ...
27-35-31 before amendment:
The property of each corporation or joint stock company (whether organized under the laws of this state or any other state or country) shall be assessed and taxed as that of a person; Its land and tangible personal property shall be assessed and taxed where situated on the first day of January of the year; ...
1980 amendment:
The property of each corporation or joint stock company (whether organized under the laws of this state or any other state or country) shall be assessed and taxed as that of a person; ... Its land and tangible personal property shall be appraised at true value and assessed and taxed where situated on the first day of January of the year; . ..
27-35-49 before amendment:
It shall be the duty of the tax assessor to assess all the lands in his county and he shall require the owner, agent, or person having possession, or charge, or any lands, to render a list of all lands owned, or in charge, or in possession, of such owner, agent, or person, and land shall be assessed according to its true value, taking into consideration the improvements thereon, ...
1980 amendment:
It shall be the duty of the tax assessor to assess all the lands in his county and he shall require the owner, agent, or person having possession, or charge, of any lands, to render a list of all lands owned, or in charge, or in possession, of such owner, agent, or person, and land shall be appraised according to its true value and assessed in proportion thereto, taking into consideration the improvements thereon.
27-35-63 before amendment:
Lands which have been sold to the state for taxes, shall be assessed at their proper value; ...
1980 amendment:
Lands which have been sold to the state for taxes shall be assessed in proportion to their true value, ...
We hold that county tax assessors are required by the amendments set forth above to appraise property to be assessed by them at true value.
We are of the opinion that the 1980 amendments directing the assessors to "assess it in proportion thereto" permit them to assess property at some percentage of true value less than 100%. The amendments and our interpretation of them are not in conflict with Section 112 of our Constitution which was amended in 1960 to provide: "Property shall be assessed for taxes under general laws, and by uniform rules, and in proportion to its value."
We note that section 27-35-113 was not amended by S.B. 2672. XX-XX-XXX provides, "that all property in general shall be assessed as nearly as possible at its true value." This language has remained unchanged since the enactment of the statute in 1916. We recognize that amendments by implication are not looked on with favor, but this language conflicts with the 1980 amendments of other statutes dealing with the valuation of property for assessment. Section 112 of the Constitution was amended *722 in 1960 to permit assessment of property for taxation "in proportion to its value." We conclude that the last enactment of the legislature should control and adhere to our former statement herein that property may be assessed at a percentage of true value less than 100%.
Although the 1980 amendments do not prescribe a fixed percentage of true value at which property is to be assessed, this omission does not prohibit tax assessors from assessing property at a percentage less than true value. Foreman v. Wheatley, 113 Miss. 555, 74 So. 427 (1917) held that the statute (now section 27-35-113) authorizes the Tax Commission to increase or decrease the valuation of any class of property in order to achieve equalization. In that case we stated:

The statute, in our judgment, authorizes the state board to increase or decrease the total valuation of any class of property in any county to the end that there may be an equalization as between counties. In doing this, the board has no authority to increase the assessment of any property above that placed by one or more of the highest assessed counties of the state. It could not arbitrarily exceed the highest valuation placed by any board upon the class of property dealt with. In all cases the act itself expressly limits the state board to true value. If they exceed true value, the individual has a right to protect himself. We cannot assume that the state board will exercise arbitrary power or undertake to confiscate property. If in equalizing as between counties it results that the total valuation of any class of property is thereby increased, a legitimate result is accomplished. The board has the same power to decrease as it has to increase, and the necessary result of the exercise of this power is not unlawful, but legitimate. Whether the board will rightfully exercise this power is a question that cannot now concern us. (113 Miss. at 601, 74 So. at 433, 434)
The former statute, now section 27-35-113, which was construed in Foreman, authorizes the Tax Commission to require a fixed percentum to be added to the valuation of any class of property in any county found too low or deducted from the assessed valuation of any class of property found too high in order that the assessment of the various classes of property in the several counties of the state will be reasonably equal and uniform throughout the state. In the exercise of this power, the Tax Commission must first determine a percentage of true value at which property will be assessed; otherwise, the uniformity and equality required by the Constitution and the statute would not be achieved. Section 112 of the Constitution authorizes assessment for taxes under general laws "and by uniform rules." As we view it, the legislature has given the Tax Commission the power to promulgate uniform rules and if equalization of assessments between counties is to be accomplished, a uniform rule fixing the percentage of true value at which property is to be assessed will be required. This is a matter which the legislature may desire to consider and make more specific, but adequate authority exists under the Constitution and our present statutes to authorize the assessment of property at a percentage less than true value, this percentage to be fixed by the Tax Commission so as to achieve equalization of assessments between the counties.
When the chancellor rendered his opinion, S.B. 2672 had not been passed by the legislature. The chancellor was correct in requiring property to be assessed at true value under the statutes in force at that time; however, we hold that S.B. 2672 amended existing statutes so that property may be assessed for taxation at a percentage less than true value.

WERE COMPLAINANTS ENTITLED TO RECOVER ATTORNEYS' FEES?
The Chancellor allowed complainants attorneys' fees in the amount of $58,000, holding that the allowance of attorneys' fees was proper because complainants brought their action, not only under Section 112 of the Constitution of Mississippi, but also under the due process clause of the Fourteenth *723 Amendment to the United States Constitution and 42 U.S.C.A. section 1983. 42 U.S.C.A. section 1988 provides that attorneys fees may be allowed in 1983 actions at the discretion of the court.
We agree with complainants that state courts have jurisdiction of 1983 actions concurrent with federal courts, but of course, a state court entertaining a 1983 action has no more jurisdiction than a federal district court.
28 U.S.C.A. section 1341 provides:
The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the Courts of such State.
It is well established that generally it is not necessary to exhaust state remedies before seeking relief under section 1983. However, the exhaustion of state remedies rule is applicable in actions brought under section 1983 to enjoin, suspend or restrain the assessment, levy or collection of taxes because of 1341.
In Bland v. McHann, 463 F.2d 21 (5th Cir.1972) cert. denied 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973) the Fifth Circuit Court of Appeals found that Mississippi law provides a plain, speedy and efficient remedy for claims that assessments for taxes in a municipality were not equal and uniform. In holding that the federal district court did not have jurisdiction to hear the case, the court held that neither judicial decisions nor section 1341 required the state remedy to be the best remedy available or even equal to or better than the remedy which might be available in federal courts. The court also held:
It is well established that § 1341 is an explicit congressional limitation on the jurisdiction of the federal courts in cases which would enjoin, suspend, or restrain state tax levy, assessment or collection. Taxpayers seek to circumvent § 1341 by arguing that relief under § 1983 is supplemental and is not limited to any requirement of exhaustion of state remedies. We do not disagree with the general rule that exhaustion is not required in § 1983 cases; however, in this case § 1983 collides full force with a specific congressional limitation on federal jurisdiction. In such circumstances we are convinced that § 1341 must prevail. (463 F.2d at 24)
Obviously this action could not have been brought in federal court under section 1983 because there is a plain, speedy and efficient remedy in Mississippi courts. Complainants, by filing their action in state court, invoked the plain, speedy and efficient remedy granted them by the chancery court and affirmed here.
We conclude the section 1983 cause of action must fail in the state court because it would have failed if it had been filed first in federal court. We therefore reverse the decree wherein it allowed complainants to recover attorneys' fees.

DID COMPLAINANTS HAVE STANDING TO MAINTAIN THEIR SUITS, AND WAS INJUNCTIVE RELIEF PERMISSIBLE?
Two other arguments of the Tax Commission should be noted. First, the Tax Commission attacks the standing of the complainants to maintain these suits. This question was answered contrary to the contention of the Tax Commission in Fondren v. State Tax Commission, 350 So.2d 1329 (Miss. 1977) where we held that Fondren had standing to bring his suit. This holding applies, not only to Fondren and his case, but also to Redd and the other complainants in their case.
Second, the Tax Commission again argues that section 11-13-11 Mississippi Code Annotated (1972) does not authorize these suits. In Fondren we held that the taxpayer was authorized to bring a suit under section 11-13-11. We adhere to our former finding and state further that these suits could have been brought in equity absent section 11-13-11 under the maxim, "Equity will not suffer a wrong without a remedy." Complainants, together with all *724 other taxpayers in the state, are guaranteed equality of taxation by Section 112 of our Constitution. The uncontradicted proof is that this constitutional concept of equality has not been met for many reasons. The principal reason is that the Tax Commission has made no serious effort to equalize assessments between the counties as authorized by statute. Complainants have suffered a wrong; they are entitled to a remedy for this wrong; no adequate remedy exists at law; therefore, they properly invoked the injunctive power of equity to remedy a wrong.

CONCLUSION
The chancellor rendered an excellent opinion in these cases, and many of his conclusions as to the best course to pursue in achieving equalization of assessments between counties were adopted by the legislature and incorporated in Senate Bill 2672. For example, the chancellor held that it is impossible to equalize assessments without first determining true value. The legislature responded and provided in sections 4, 5, 7, 8 and 10 that tax assessors shall appraise property at true value. The legislature also defined true value in section 9.
The chancellor also suggested that reappraisal could be accomplished by the county tax assessors by establishing the true value of property to be assessed by utilizing the expertise of the Tax Commission in this field. Section 12 authorizes the Tax Commission to promulgate rules and regulations setting forth the minimum requirements for certification of assessors or their assistants, or both, requires each county to have at least one certified appraiser, and provides for expenses for training local tax assessors and their assistants. This will enable all tax assessors to use the same criteria in establishing true value. Section 13 recognizes that in order to accomplish statewide reappraisal of property it will be necessary to have adequate aerial photographs of the state and authorizes the Tax Commission to contract for aerial photographs and in turn sell to the counties and municipalities negatives of such aerial photographs. In sections 14 and 15 the legislature limited the amount of revenue that might be raised in each county and in multi-county districts not to exceed ten percent of the revenue for the preceding fiscal year. Section 16 provides that if revenue is collected in excess of that authorized in sections 14 and 15, any excess must be invested and calculated in the budgets of the counties for the succeeding fiscal year. This should effectively allay the fear that taxes will be increased an excessive amount. Section 17 recognizes that certain counties may desire to accomplish reappraisal by contract with appraisal firms, but requires all contracts for reappraisal to be approved and supervised by the Tax Commission.
In our opinion the legislature has taken a giant step toward equalization of the assessment of property for taxation by the enactment of S.B. 3672 and is to be commended for its forthright approach to this problem which has plagued the State of Mississippi for many years.
We are of the opinion that the injunction ordered by the chancellor is required because the Chairman of the State Tax Commission testified that he did not consider that Section 112 of the Constitution and section 27-35-113 Mississippi Code Annotated (1972) imposed a duty on the Tax Commission to equalize assessments between the counties. We are confident that the Tax Commission will now recognize its duty and responsibility to equalize assessment between counties and will proceed with the task in a speedy and efficient manner.
S.B. 2672 went into effect on May 16, 1980 and requires the county tax assessors to appraise property to be assessed by them at true value. This requirement applies to the assessments for the year 1980 indicating to us that the legislature intends for equalization of assessments to be accomplished forthwith. If the tax assessors, the boards of supervisors, and the Tax Commission will attack the problem of equalization diligently, we are of the opinion equalization of assessments between the counties can be accomplished earlier than the 1983 date fixed by the chancery court.
*725 By way of summary, we affirm in part, reverse in part and modify. We affirm the decree enjoining the Tax Commission from accepting and approving assessment rolls from any county for the tax year 1983 unless the Tax Commission equalizes the assessment rolls between all of the counties of the state. We reverse that part of the decree ordering that property be assessed at true value and hold that assessed value may be a percentage of true value. We reverse the allowance of attorneys' fees. The chancellor required the State Tax Commission to file a master plan to assist the counties in determining true value of taxable property no later than May 1, 1979. This date having passed, we modify the decree to require the plan to be filed no later than November 15, 1980.
AFFIRMED IN PART, MODIFIED IN PART, REVERSED IN PART, AND RENDERED.
PATTERSON, C.J., ROBERTSON, P.J., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
SMITH, P.J., dissents.
SMITH, Presiding Justice, dissenting:
Almost a century has elapsed since the Constitutional Convention of 1890 at which the Mississippi Constitution was adopted. In this year of 1980, we find ourselves mandating a course of action not hitherto attempted. It is one that contemplates radical changes in the methods of assessing property for taxation which have been followed for almost one hundred years. The principal impact, of course, will fall upon the owners of real property, and its practical consequences cannot be foreseen.
I have the utmost respect for the views of the majority. I admire the erudite and reasoned controlling opinion. My objection is pragmatic. Neither the legislature nor the courts should order or attempt to require the accomplishment of an impossibility.
The key word, of course, is "true value." It is the foundation stone upon which the whole edifice rests. It is required that each piece of real property in Mississippi be "appraised at its true value." The State of Mississippi embraces territory very extensive in area, consisting of numerous types and conditions of property, the value of which is affected by many factors, including location, improvements, use and others. It is known that equalizing property values in an area as small as one county by a locally elected assessor is of surpassing difficulty. The familiarity of this Court with the irreconcilable testimony of countless appraisers, especially in eminent domain suits, should have made it incontrovertibly plain that determining "true value," which in any case can only be an opinion, on a statewide basis, is an impossibility.
If this cannot be done, that is, appraise all realty throughout the state at its "true value," and I am unable to conceive of any method viewed realistically by which it can be, then it is idle to take the next proposed step to order it taxed "in proportion to its true value." It is difficult to envisage the result of the attempt. Certainly, the impact on landowners and land values will not be inconsiderable. The cost cannot be viewed as negligible.
The idea is attractive but reality at times prevents the fulfillment of our most Utopian dreams. Perhaps we should recognize that although we may yearn for such a change, our ability to bring it about is dubious.
Omar Khayyam, many centuries ago, expressed the thought thus:
"Could we but grasp this sorry scheme of things entire And shatter it to bits- Could we not remold it nearer to the hearts desire?"
RUBAIYAT.
I adhere to the views expressed in my dissent and that of Justice Robertson, in which Justice Inzer concurred, in Fondren v. State Tax Commission, 350 So.2d 1329 (Miss. 1977).
NOTES
[1] Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value. Property shall be assessed for taxes under general laws, and by uniform rules, and in proportion to its value. But the legislature may provide for a special mode of valuation and assessment for railroads, and railroad and other corporate property, or for particular species of property belonging to persons, corporations, or associations not situated wholly in one county. But all such property shall be assessed in proportion to its value, and no county, or other taxing authority, shall be denied the right to levy county and special taxes upon such assessment as in other cases of property situated and assessed in the county. But the legislature may provide a special mode of assessment, fixing the taxable year, date of the tax lien, and method and date of assessing and collecting taxes on all motor vehicles.
[2] This assumes that the assessors and the boards of supervisors in each county of the district used the same criteria to establish true value.